(No. 15579.—Judgment affirmed.)

THE JOHN GRIFFITHS & SON COMPANY, Appellee, *vs.* THE
NATIONAL FIREPROOFING COMPANY, Appellant.

*Opinion filed December 19, 1923.*

1. NEGLIGENCE—*the owner, contractor and sub-contractor are
equally bound to comply with act of 1907.* Since the passage of
the act of 1907 (Laws of 1907, p. 312,) providing for the protection and safety of persons engaged in the construction of buildings,
the owner of the property and every contractor and sub-contractor
are equally bound by the act and are liable for any injury sustained
by reason of willful failure to comply with its provisions; and
neither the owner by contract with the contractor nor the contractor by contract with a sub-contractor can evade this liability.

2. SAME—*sub-contractor's agreement to indemnify contractor
against liability for negligence is not against public policy.* Where
the relation of two persons to the performance of work is such
that both may be liable to a third person for an injury resulting
from the work, there is no public policy which prohibits either
from indemnifying the other against loss arising from positive acts
of negligence by the indemnitor, and a sub-contractor's agreement
to indemnify the principal contractor against any liability for an
injury due to the sub-contractor's negligence is good as between
the contracting parties, and, although the sub-contractor has settled
with the injured party, the principal contractor is entitled to indemnity for whatever sum he is required to pay on the injured
party's claim.

3. SAME—*when right to indemnity arises between wrongdoers.*
The general rule that one of several wrongdoers cannot recover
from another although he may have been compelled to pay all the
damages for the wrong done does not apply where one party is
principally responsible for the injury while the other is exposed to
liability merely because of the position in which he is placed, but
the law will in such case put the ultimate loss upon the one principally responsible for the injury.

4. PUBLIC POLICY—*what determines public policy of the State.*
The public policy of the State is to be found in its constitution
and statutes, and, where these are silent, in its judicial decisions.

APPEAL from the Third Division of the Appellate Court
for the First District;—heard in that court on appeal from
the Municipal Court of Chicago; the Hon. HOWARD HAYES,
Judge, presiding.

JOHN T. RICHARDS, for appellant.

WINSTON, STRAWN & SHAW, and JOHN CLARK BAKER, (JOHN D. BLACK, and RODNEY C. GLOVER, of counsel,) for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Appellate Court for the First District affirmed a judgment of the municipal court of Chicago in favor of the John Griffiths & Son Company against the National Fireproofing Company for $9921.87. The appellant having obtained a certificate of importance has prosecuted an appeal to this court from the judgment of the Appellate Court.

The municipal court sustained the motion of the appellee to strike out the affidavit of merits of the appellant and rendered judgment by default. The question presented, therefore, is whether the affidavit of merits stated a defense to the appellee's claim.

The appellee's statement of claim showed the following facts: The appellee, being the general contractor for the construction of the Lytton building, in the city of Chicago, for The Hub, a corporation, which was the owner, entered into a contract with the appellant to do the fireproofing work on the building. The contract provided that the appellant should exercise due diligence in the performance of the work and should hold the appellee and The Hub harmless from loss, cost or expense arising from any and every accident happening to any person whomsoever and occasioned directly or indirectly by the operations of the appellant or by its sub-contractors. During the progress of the appellant's work under this contract John Slaughter was accidentally injured by a piece of fireproof tiling of the appellant falling out of one of the windows of the building on his head. Immediately before the happening of the accident the appellant had erected a scaffold on one of the upper floors of the building, which was used by its servants in its operations under the contract, one of whom placed a

pile of fireproof tile on the scaffold, a part of which fell off the scaffold upon the window ledge and through the window on Slaughter. Slaughter afterward brought suit in the superior court of Cook county against the appellee, The Hub and others, including appellant, for the recovery of $30,000 damages on account of his injuries. The appellant, in consideration of the execution of a covenant by Slaughter not ·to prosecute any action against it, paid him $7500, and Slaughter dismissed his action. Afterward he brought another action in the circuit court of Cook county against the appellee, The Hub and others, not including the National Fireproofing Company, to recover $30,000 damages for his injuries. The appellee notified the appellant of the pendency of the action and demanded that the appellant assume the defense of it and hold the appellee harmless from any judgment or expense growing out of it, but the appellant refused to defend the action and the appellee by its attorney defended.

The declaration of Slaughter consisted of eight counts, but as the cause was tried on the first four, only those counts need be stated. Each of the first four counts alleged that the defendants were engaged in the construction of the Lytton building, and that a scaffold had been erected, with their knowledge and consent, on the ninth floor; that the defendants willfully failed to comply with the provisions of section 9 of the act providing for the protection and safety of persons engaged in the construction, repairing, alteration or removal of buildings, bridges, viaducts and other structures, (Laws of 1907, p. 312,) and did not cause the scaffold to be erected in a safe, suitable and proper manner but permitted it to be erected and constructed in such a manner that it was shaky and easily vibrated, and they permitted large quantities of building material, consisting of tile, brick and terra cotta, to be piled on the scaffold, and while the plaintiff was working in another building adjoining the Lytton building a piece of such material fell from

the scaffold upon the plaintiff, struck him upon the head and injured him. The appellee's statement of claim set forth that the building in the declaration mentioned was the building upon which the appellant was conducting its operations under its contract with the appellee; that the scaffold was the appellant's scaffold and the building material,— tile, brick and terra cotta,—was the property of the appellant, and all the employees and servants mentioned in the declaration were the servants of the appellant; that on the trial of the action the judge instructed the jury there could be no recovery on any other ground than a violation of the statute relied upon in the plaintiff's declaration, and thereupon the jury returned a verdict against the appellee and The Hub, assessing the damages at $20,000, for which judgment was entered. The appellee and The Hub prayed an appeal to the Appellate Court, which affirmed the judgment to the amount of $7500, all of the judgment above that amount being remitted by the plaintiff. The appellee paid Slaughter the amount of the judgment and paid its attorneys $1000 for their services in defending the action.

The amended affidavit of merits set out at length sections 1 and 9 of the act of the legislature mentioned in the appellee's statement of claim, and alleged that in John Slaughter's suit, in which judgment was rendered against the appellee, the declaration charged that the failure of the appellee to comply with the terms of the statute caused the injury and damages complained of. It set forth the instructions of the court, which told the jury, in substance, that they should find any defendant who was not shown by the preponderance of the evidence to have had knowledge of the erection or construction of the scaffold or to have consented to its construction or erection not guilty, and that, regardless of any other question, there could be no recovery under the statute unless it was proved that the violation of such statute, if any, was intentional and willful. The affidavit alleged that by the verdict and judgment of

the circuit court the appellee was adjudged guilty of the
violation of the statute and of failure to comply with its
requirements.

It is contended by the appellant that its undertaking to
indemnify the appellee against all loss, cost or expense aris-
ing from any accident to any person occasioned by the op-
erations of the appellant, so far as John Slaughter is con-
cerned, is an undertaking to indemnify the appellee against
loss by reason of its own violation of the law and is there-
fore against public policy and void.   The act of 1907 im-
poses upon the contractor and the owner, as well as upon
sub-contractors, foremen or others engaged in the work, the
duty of complying with the provisions of the act so far as
the civil liability is concerned.   (*Claffy* v. *Chicago Dock
Co.* 249 Ill. 210.)   Before the enactment of this law, where
work was done under such circumstances as to constitute
the person doing it an independent contractor, the owner
was not liable for an injury caused by the negligence of
such independent contractor.   (*Scammon* v. *City of Chi-
cago,* 25 Ill. 424; *Pfau* v. *Williamson,* 63 id. 16; *Jefferson*
v. *Jameson & Morse Co.* 165 id. 138.)   Since the enact-
ment of this law the owner of the property and every con-
tractor and sub-contractor are equally bound by the act to
comply with its provisions, and in case of willful failure
are liable to the party injured for any direct damages sus-
tained by reason of such failure.   This liability to the per-
son injured the owner or original contractor cannot evade
by any contract with the contractor or sub-contractor.

The appellant does not claim that it and the appellee
were joint tort feasors, but, on the contrary, claims that
they were not, and we do not decide whether they were or
not.   The appellant's argument is based solely on the claim
that the statute imposes upon every owner and contractor an
absolute duty of personal inspection of every scaffold, hoist,
ladder or other mechanical contrivance used in the work of
erection, construction, repair, alteration, removal or paint-

ing of any building, and that public policy prohibits a contractor for such work from indemnifying the owner, and a sub-contractor from indemnifying the owner or general contractor, against loss, cost or expense arising from any accident to any person occasioned by the operations of the contractor or sub-contractor, respectively, and from being indemnified by any other contractor or sub-contractor in the same manner. The result would be that every owner and every contractor must be liable for damages sustained by reason of any injury occasioned by a willful failure to make such inspection and could obtain no insurance against the loss. If the sub-contractor's undertaking to indemnify the general contractor or the owner against the sub-contractor's negligence is against public policy and void because based upon the owner's or contractor's violation of the law, the same objection would make void any policy of insurance against such loss. If the contract is illegal because it purports to indemnify against the consequences of an illegal act, the same illegality would affect the contract of an insurance company. We do not assent to this claim of the appellant. The argument is a misapplication of the doctrine, founded in public policy, that no right of action can arise out of a fraud or an illegal or immoral contract. The rule that contracts to do what is prohibited by law, to commit a crime or knowingly to commit a trespass or other wrong, or to do any act involving moral turpitude, are illegal, is illustrated by many cases, which need not be referred to in detail. Contracts in consideration of the procuring of false testimony to be used in court; of a lease of property to be used for unlawful purposes; of the payment of money to influence legislation; of procuring the passage of an ordinance by a city council; of the performance of their duties by public officers; of the purchase or sale of public office; of the compounding of crime and stifling of criminal prosecutions; of the loan of money by a bank against a prohibition of its charter; of the sale of intoxicating liquors in

violation of law, are all examples of the illegal or immoral contract from which no right of action can arise. Many more instances might be cited. They are all cases where the actual consideration of the contract requires the doing of an act which is a violation of law or is founded upon an immoral consideration, is opposed to public policy or tends to interfere with the administration of justice or corrupt public morals. Courts of justice will not enforce the performance of any such contracts or aid in the division of the profits arising out of them among associates.

The undertaking of the appellant is not an illegal contract and is not to indemnify against an illegal act. We have seen that at common law an owner might relieve himself entirely from liability for an injury caused by negligence in the construction of a building by employing an independent contractor to construct it, and the general contractor might relieve himself from liability for negligence in the construction of the whole or part of the work by the employment of an independent sub-contractor. A city or village is bound to exercise ordinary care to keep its streets in a reasonably safe condition for use by the public. If it permits its streets to be rendered unsafe by operations which it has permitted, it is liable for injuries to third persons caused by the negligence of the persons whom it has permitted to occupy the streets and render them unsafe. It cannot escape this liability, but it may recover from the person whose negligence caused the injury indemnity for the amount it is required to pay. The municipality and the person negligently causing the injury are equally liable to the injured person, but the law recognizing the justice of requiring the person whose actual negligence was the proximate cause of the injury to pay the damages, permits a recovery by the municipality which only passively allowed the condition to arise against the active wrongdoer, who, alone, actually did the act causing the injury. (*Severin* v. *Eddy*, 52 Ill. 189; *Gridley* v. *City of Bloomington*, 68 id. 47;.

310—22

*Knox* v. *City of Sterling, 73* id. 214; *City of Chicago* v. *Robbins,* 67 U. S. 418; *Washington Gaslight Co.* v. *District of Columbia,* 161 id. 316.)   The liability to the municipality of the person whose negligence caused the injury rests upon the theory that he is the real author of the wrong, and the municipality, not being the wrongdoer but having been compelled to pay the damages only because of its relation to the public, should have a remedy against the real author of the injury.   (*Knox* v. *City of Sterling, supra.*) The real wrongdoer is liable because of his active fault in producing the defective condition.   (*City of Topeka* v. *Central Sash and Door Co.* 97 Kan. 49.)   In the case of *Lowell* v. *Boston and Lowell Railroad Corp.* 23 Pick. 24, it is said that the law "does not in every case disallow an action by one wrongdoer against another to recover damages incurred in consequence of their joint offense.   The rule is, *In pari delicto potior est conditio defendentis.*   If the parties are not equally criminal, the principal delinquent may be held responsible to his co-delinquent for damages incurred by their joint offense.   In respect to offenses in which is involved any moral delinquency or turpitude all parties are deemed equally guilty, and courts will not inquire into their relative guilt; but where the offense is merely *malum prohibitum* and is in no respect immoral, it is not against the policy of the law to inquire into the relative delinquency of the parties and to administer justice between them although both parties are wrongdoers."

Where the relation of two persons to the performance of work is such that both may be liable to a third person for an injury resulting from the work, there is no public policy which prohibits either from indemnifying the other against loss arising from positive acts of negligence by the indemnitor.   Where one of them is only passively negligent but is exposed to liability through the positive acts and actual negligence of the other, the parties are not in equal fault as to each other though both are equally liable to the

injured person. Their relation to one another, under these circumstances, was considered in *Union Stock Yards Co. v. Chicago, Burlington and Quincy Railroad Co.* 196 U. S. 222, where it was said that the general rule that one of several wrongdoers cannot recover against another wrongdoer although he may have been compelled to pay the damages for the wrong done is in many instances held inoperative in order that the ultimate loss may be visited upon the principal wrongdoer, who is made to respond for all the damages, where one less culpable, although legally liable to third persons, may escape the payment of damages assessed against him by putting the ultimate loss upon the one principally responsible for the injury done. In referring to the case of *Washington Gaslight Co. v. District of Columbia, supra,* it is said that "the general principle was recognized that notwithstanding the negligence of one for which he has been held to respond, he may recover against the principal delinquent where the offense did not involve moral turpitude, in which case there could be no recovery, but was merely *malum prohibitum,* and the law would inquire into the real delinquency of the parties and place the ultimate liability upon him whose fault had been the primary cause of the injury."

The general rule is that where two parties acting together commit an illegal or wrongful act the party injured may hold both responsible for the damages resulting from their joint act and neither can recover from the other the damages he may have paid or any part of them. The further general principle is announced, however, in many cases, that where one does the act which produces the injury and the other does not join in the act but is thereby exposed to liability and suffers damage the latter may recover against the principal delinquent, and the law will inquire into the real delinquency and place the ultimate liability upon him whose fault was the primary cause of the injury. (*Lowell v. Boston and Lowell Railroad Corp. supra; Gray v. Bos-*

*ton Gaslight Co.* 114 Mass. 149; *Washington Gaslight Co.* v. *District of Columbia, supra; Union Stock Yards Co.* v. *Chicago, Burlington and Quincy Railroad Co. supra.*) So a retailer of oil who has been compelled to pay damages to a customer who was injured by an explosion of kerosene sold to him which was below the statutory test could recover damages from the manufacturer who sold the kerosene to him bearing the inspector's stamp. (*Pfaar* v. *Standard Oil Co.* 165 Iowa, 121.) An owner against whom damages were recovered for an injury occasioned by the operation of an elevator defectively equipped may recover indemnity for the amount paid from the manufacturer by whom the elevator was installed. (*Wanamaker* v. *Otis Elevator Co.* 228 N. Y. 192; *Boston Woven Hose and Rubber Co.* v. *Kendall,* 178 Mass. 232.) In *Fuller Co.* v. *Otis Elevator Co.* 245 U. S. 469, a general contractor against which a judgment had been recovered for the negligence of an elevator man who, as between the contractor and the injured man, was regarded as the servant of the contractor, recovered a judgment against the Otis Elevator Company, which was installing the elevator, on the ground that the elevator man was, as between the contractor and the Otis Elevator Company, the servant of the latter. Upon the theory of placing the ultimate liability on him whose fault was the primary cause of the injury and whose positive acts negligently done have produced the defective condition which caused the injury, the appellant should pay the damages as between him and the original contractor, whose negligence was merely passive.

The statute has imposed upon the owner and the contractor, who were under no liability whatever at common law in a case like the present, the same kind of liability which rests upon a municipality, and they cannot escape it. Whether they could maintain an action for indemnity against the person actually causing the injury by his negligence as the proximate cause, in the absence of a contract,

we are not called upon to decide.   That person, the sub-contractor, has by contract assumed this obligation of indemnity.   The only question is as to the legality of the contract, and the only objection made to its legality is the question of public policy.   The public policy of the State is to be found in its constitution and statutes, and, where these are silent, in its judicial decisions.   (*Zeigler* v. *Illinois Trust and Savings Bank,* 245 Ill. 180.)   In 1899 the General Assembly passed an act authorizing the organization of corporations insuring against loss or damage resulting from accident to or injury suffered by an employee or other person for which accident or injury the person insured is liable.   (Laws of 1899, p. 387.)   In 1915 another law was enacted providing for the organization of mutual insurance corporations having the power to make contracts of insurance against loss, expense or liability by reason of bodily injury, death by accident, disability, sickness or disease suffered by others for which the insured may be liable or may have assumed liability.   (Laws of 1915, p. 485.)   Liability insurance is usually carried by employers of labor, and the Workmen's Compensation act provides for liability insurance under certain circumstances.   It is an important department of the insurance business, and the very object of it is to protect the employer or other person insured against liability for accidents, which are of frequent occurrence and are usually the result of negligence.   The validity of such a contract of indemnity cannot be questioned and is not affected by the fact that the indemnitor is the contractor or sub-contractor rather than an insurance company.   (*Heman Construction Co.* v. *City of St. Louis,* 256 Mo. 332.)   The question of the extent to which public policy would restrict the right of an insurance company to issue a policy insuring against liability by reason of the operation of an automobile was considered in the case of *Messersmith* v. *American Fidelity Co.* 232 N. Y. 161, in which it was said the legislature had authorized insurance companies to

indemnify against liability for loss and damage through the use and maintenance of automobiles. The court said: "To restrict insurance to cases where liability is incurred without fault of the insured would reduce indemnity to a shadow. Neither in the statute nor in its application as shaped by long-continued practice is there the token of an intention that indemnity shall be withheld from owners operating their own cars and limited to those whose cars are run by servants. Liability of the owner who is also the operator can never be incurred without fault that is personal. Indeed, the statute has so covered the field that it can seldom, if ever, be incurred without fault that is also crime." Policies insuring owners of automobiles against loss or damage on account of their operation were held not contrary to public policy in *Taxicab Motor Co.* v. *Pacific Coast Casualty Co.* 73 Wash. 631.

Since the legislature has expressly authorized the organization of corporations to indemnify owners of automobiles against liability incurred by their own negligence there seems to be no basis for holding it contrary to public policy for contractors to indemnify owners of buildings or subcontractors to indemnify original contractors against loss occasioned by the actual negligence of the indemnitors, even though such owners or original contractors may have been themselves guilty of passive or constructive negligence. Such a contract does not provide for the doing or omission of any act. The contract in the present case does contemplate that an accident may happen through the negligence of the appellant's servants for which the appellee may be liable, and provides that the appellant will indemnify the appellee against such liability for the appellant's negligence. It is not contrary to public policy that the appellant should contract to pay the damages caused by its own negligence.

The judgment is affirmed.

*Judgment affirmed.*