(No. 38696.—

THE CHICAGO AND ILLINOIS MIDLAND RAILWAY COMPANY, Appellee, *vs.* EVANS CONSTRUCTION Co., *et al.,* (PILLSBURY MILLS, INC., Appellant.)

*Opinion filed June 24, 1695.*

HERSHEY, J., took no part.

HERSHEY AND BLISS, of Taylorville, and R. G. HECK-ENKAMP, of Springfield, for appellant.

GRAHAM AND GRAHAM, and C. D. FORTH, both of Springfield, for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

Curtis Barron, a switchman employed by the plaintiff, Chicago & Illinois Midland Railway Company, was injured in the course of switching operations on the premises of Pillsbury Mills, Inc., hereafter defendant. He asserted a claim against the plaintiff under the Federal Employers' Liability Act. The plaintiff settled the claim and then brought this action for indemnity. The trial judge found for the plaintiff and entered judgment against the defendant in the sum of $10,168.14, the amount of the settlement. The appellate court affirmed, (47 Ill. App. 2d 373) and we granted leave to appeal.

Prior to the date of the accident, the defendant had entered into a contract with Evans Construction Co. for the construction of new warehouses, and for new and rehabilitated switch tracks to serve them. Evans entered into a subcontract with Krueger Construction Co. for grading, excavating and ballasting the bed of the tracks, and with Novelli Construction Co. for furnishing new ties and laying the tracks. This action was instituted against the de-

fendant, its general contractor, and the two subcontractors. At the close of the plaintiff's evidence the trial court granted motions for judgment in favor of the general contractor and the two subcontractors, and at the close of all of the evidence entered judgment against the defendant.

The work in connection with the tracks was completed during the latter part of July of 1955 and an inspection was made by M. E. Peterson, the plaintiff's chief engineer, together with the president of Evans, (who had formerly been the plaintiff's chief engineer,) and a representative of Novelli, to determine whether the tracks were constructed according to specifications and whether they were safe for switching operations. Peterson testified that no footing hazards were observed during the course of his inspection, and that there were no loose ties lying around at that time. The exact date of the inspection was not established, but Peterson testified that the inspection could have been as late as July 31.

Operations over the new switch tracks began on the night of August 1, 1955. Curtis Barron was the foreman of the switching crew, and about four o'clock on the morning of August 2, he got off a moving box car and stumbled over an old railroad tie which lay on top of and across the rails of adjacent tracks. He fell, and sustained injuries. Some old railroad ties that had been removed in the course of reconstructing the switch tracks had been stacked on the south side of a scale house. Trucks bringing grain to the defendant drove from the adjacent street across some of the switch tracks, entered the north end of the scale house, were weighed and dumped, and then left the defendant's premises by a driveway that led from the south end of the scale house across the tracks and back to the adjacent street. The tie over which Barron stumbled was lying just south of the south driveway, about sixty to seventy-five feet from where the ties were stacked.

In any case involving a noncontractural claim of in-

demnity between tortfeasors, the indemnitee has, by hypothesis, violated a duty that he owed to a third party and has become liable to respond in damages for his breach of duty. By his action for indemnity he seeks to shift the loss to the indemnitor upon the theory that the indemnitor has also violated a duty that he owed to the third party. Particularly in jurisdictions like this one, in which contribution among joint tortfeasors is not allowed, (see *Johnson* v. *Chicago and Pacific Elevator Co.* 105 Ill. 462; *Skala* v. *Lehon,* 343 Ill. 602) it is necessary to draw a qualitative distinction between the negligence of the two tortfeasors if the action for indemnity is to succeed.

Efforts to evolve a capsule description that would embrace all situations in which indemnity should be allowed have not been notably successful. One of the leading cases, *Lowell* v. *Boston and Lowell Railroad Corp.* 23 Pick (Mass.) 24, drew a distinction between conduct that is "merely *malum prohibitum* and is in no respect immoral" on the one hand, and conduct that involves "moral delinquency or turpitude" on the other. But the bulk of the cases in which the problem arises today are concerned with conduct that can hardly be said to involve moral delinquency or turpitude. Where indemnity has been allowed, the conduct of the indemnitor has sometimes been characterized as the primary cause of the harm, and that of the indemnitee has been described as a secondary cause. (See *Standard Oil Co.* v. *Robins Dry Dock & Repair Co.* (C.C.A. 2. 1929) 32 F.2d 182.) Most frequently, perhaps, the conduct of the indemnitee is described as passive negligence, and that of the indemnitor as active negligence. (See *Gulf, Mobile and Ohio Railroad Co.* v. *Arthur Dixon Transfer Co.* 343 Ill. App. 148.) A last clear chance doctrine, which makes the allowance of indemnity turn upon the time sequence of the conduct of indemnitor and indemnitee, has sometimes been employed. See Leflar, Contribution and Indemnity Between Joint Tortfeasors, 81 U. of Pa. L. Rev. 130, 151.

As often happens in the law, the general pattern of the decisions is not difficult to understand, although it is hard to evolve a description that will encompass all of the cases. The decisions primarily relied upon by the plaintiff are illustrative. In *Gulf, Mobile and Ohio Railroad Co.* v. *Arthur Dixon Transfer Co.* 343 Ill. App. 148, the railroad was allowed indemnification for the amount it was required to expend when one of its employees was caught between a railroad car and a truck which the defendant had parked too close to the track to allow room for clearance. In *United States* v. *Chicago, Rock Island & Pacific Railway Co.* 171 F.2d 377, the railroad was allowed indemnity for amounts paid to an employee who was injured when his foot was caught between the footboard of the engine and a pile of hardened black top material which the defendant permitted to accumulate immediately adjacent to the track. In *Moroni* v. *Prepakt, Inc.* 24 Ill. App. 2d 534, the railroad had contracted for construction work upon its property, and an employee of the contractor was injured, allegedly by reason of a violation of the Scaffold Act. The railroad's third party complaint for indemnity against the contractor was sustained against a motion to dismiss, upon the ground that the contractor was the "active and primary" wrongdoer and upon the basis of an implied contract of indemnity. In *Standard Oil Co.* v. *Robins Dry Dock & Repair Co.* (C.C.A.2. 1929) 30 F.2d 182, to which reference has been made, the employee of a ship owner was injured when he fell from an unsafe gangway furnished by the defendant dry dock company, and the ship owner was allowed to recover indemnity.

In these cases the dangerous condition that caused the injury was created by the defendant, and plaintiff's negligence amounted to no more than the failure to discover and remedy it. Section 95 of the Restatement of Restitution is as follows: "Where a person has became (sic) liable with another for harm caused to a third person because of his

negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition."

In the case before us, the plaintiff bases its right to indemnity upon the ground that the negligence of the defendant was active, while its own negligence was passive. It states that "this case is predicated upon the impropriety (active negligence) of defendant in placing or failing to remove the tie which caused the employee's injury. * * * The plaintiff and its employees were business invitees. The plaintiff railroad was responsible for failing to afford the employee a safe place of employment. This it did not do, but this is passive negligence. Defendant, Pillsbury, the landowner, expecting plaintiff railroad's use of the premises, had the duty to make the premises safe for plaintiff and its employees. The breach of this duty is active negligence."

The difficulty with this position is that there is no proof as to how the tie came to be where it was when the accident occurred, or how long it had been there. The evidence supports the inference drawn by the trial court that the tie that caused the injury was one of the discarded ties belonging to the defendant, but it goes no further. The tie was a standard tie and weighed about 150 pounds. There is no evidence which suggests that the defendant or any of its employees placed the tie on the tracks, and there is no evidence which suggests that the defendant knew that it was there. In the language of the Restatement, the evidence does not show that the dangerous condition was created by the defendant. The breach of duty relied upon to shift the entire cost of the injury from the plaintiff to the defendant must therefore be the defendant's failure to discover and remove the tie,—a failure to see that the premises were safe for

the work that was to be done. But exactly that same duty rested upon the plaintiff.

The appellate court agreed that the plaintiff "was guilty of no more than passive negligence by allowing the condition to arise which caused injury to its employee, Curtis Barron." (47 Ill. App. 2d at 377.) It held that the defendant "should have foreseen that some of the old or new ties or other material used in completing the work might have been left on or near the tracks creating a footing hazard rendering the premises unsafe for the employees of the plaintiff, and that Pillsbury had the duty to make an inspection of the premises prior to their use to learn of such danger." (47 Ill. App. 2d at 379.) And it concluded that the defendant could not rely on the inspection, made before switching operations were commenced, by the plaintiff's chief engineer, the general contractor and one of the subcontractors "for the reason that the representatives of Evans and Novelli, who accompanied Mr. Peterson at the time he made the inspection for the railroad company, were not employees of defendant but of Evans and Novelli, the general contractor and one of the subcontractors. Pillsbury had the duty to make its own inspection to ascertain if the premises were safe for use by its business invitees and could not rely upon an inspection made by the business invitee or someone else." 47 Ill. App. 2d at 380.

But the plaintiff's case is not advanced even if the proposition be accepted that the inspection by the defendant's general contractor and one of the subcontractors is for some reason not to be regarded as the equivalent of an inspection by a paid employee of the defendant. For the significance of the inspection is that it established that there were no hazards to the footing of the trainmen when the inspection was made before switching operations were commenced. The injury involved in this case did not occur because the tracks were in an unsafe condition prior to the

commencement of switching operations, but because the tie that caused the injury was by some unknown means, at some unknown time, placed upon the tracks at the point of injury.

It is true that an inspection immediately prior to the accident would have prevented it. But the duty to make such an inspection rested equally upon the plaintiff and the defendant. In the language of the Restatement, as between the two it was not the duty of the defendant to make the defective condition safe. In this respect the case closely resembles *Union Stock Yards Co.* v. *Chicago, Burlington & Quincy Railroad Co.* 196 U.S. 217, 49 L. ed. 453. There the defendant railroad company had furnished a car with a defective brake to the stock yards terminal company and as a result an employee of the terminal company was injured. The defect was discoverable upon a reasonable inspection, and both parties were under a duty to inspect. The terminal company was held liable to its employee, and then sought indemnity from the railroad company. The court said, pp. 227, 228: "The case then stands in this wise: The railroad company and the terminal company have been guilty of a like neglect of duty in failing to properly inspect the car before putting it in use by those who might be injured thereby. We do not perceive that, because the duty of inspection was first required from the railroad company, that the case is thereby brought within the class which holds the one primarily responsible, as the real cause of the injury, liable to another less culpable, who may have been held to respond for damages for the injury inflicted. * * * In the present case the negligence of the parties has been of the same character. Both the railroad company and the terminal company failed, by proper inspection, to discover the defective brake. The terminal company, because of its fault, has been held liable to one sustaining an injury thereby. We do not think the case comes within that exceptional class

which permits one wrongdoer who has been mulcted in damages to recover indemnity or contribution from another."

In the present case the plaintiff was not the usual business invitee, but was one which, in the conduct of its hazardous operations, was subject to a non-delegable statutory duty to provide a safe place for its employees to work. That duty was no less stringent than the duty of the defendant as the owner of the premises. Since we hold that the plaintiff was not entitled to indemnity from the defendant, it is not necessary to consider whether the injured employee was guilty of contributory negligence. The judgments of the circuit and appellate courts are reversed.

*Judgments reversed.*

Mr. JUSTICE HERSHEY took no part in the consideration or decision of this case.