Dorothy Wessel, Admr. of the Estate of Larry Keith Wessel, *et al.*, Plaintiffs, *v.* Carmi Elks Home, Inc. *et al.*, Defendants and Third-Party Plaintiffs-Appellants—(Emily Rice *et al.*, Third-Party Defendants-Appellees.)

(No. 69-141;

Fifth District—July 27, 1971.

EBERSPACHER, P. J., dissenting.

J. C. Mitchell and W. A. Armstrong, both of Marion, for appellants.

Gosnell, Benecki & Quindry, of Lawrenceville, and Kern & Pearce and Conger & Elliott, both of Carmi, for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

In this case the issue presented is whether the circuit court was correct,

as a matter of law, in dismissing a third party complaint for indemnity in a dram shop case.

Appellants are third party plaintiffs; appellees third party defendants. Third party plaintiffs own and operate dram shops in Carmi, White County, Illinois. The case in question was originally commenced by the filing of a complaint against them in which the plaintiffs seek damages in accordance with the provisions of the Illinois Dram Shop Act. The third party defendants, alternatively, are alleged to be a person intoxicated at the time one of them drove an automobile from a parking lot into a residential dwelling resulting in the injuries and damages to the plaintiffs alleged in their complaint. Third party plaintiffs are alleged to have caused the intoxication of said third party defendants in whole or in part. By way of third party complaint, third party plaintiffs seek indemnity from third party defendants for all loss sustained by them with respect to the original complaint filed against them.

■■ This court has previously held that indemnification will not be allowed a dram shop keeper or owner for liability imposed by the Dram Shop Act. (*Coffey v. ABC Liquor Stores* (1957), 13 Ill.App.2d 510, 142 N.E.2d 705.) The court there noted that the regulations of the Dram Shop Act are established for the purpose of protection of health, morals and safety of the people, that tavern operators do not have an inherent right to sell intoxicating liquors, and the liability under the Dram Shop Act is penal in nature. In denying the action for indemnity, the court stated:

> "While the liability imposed upon liquor sellers by the Dram-shop Act is purely of statutory origin, it is nonetheless a liability which the liquor dealers agree to accept and be bound by upon entering the liquor business. In all the cases which were directed to our attention on appeal, permitting indemnification as against a tortious third party as an exception to the joint tortfeasor rule, the parties were all innocent parties who established the right of indemnification as against contractors, or servants, or others. It is difficult to reconcile the position of a tavern operator who is found guilty under the provisions of the Illinois Dramshop Act with the innocent party position established by such precedents, since by the terms of the Act the tavern operator must necessarily be a tort-feasor and so penalized by statute. As a consequence, since the Illinois Dramshop Act does not grant any rights of indemnity or subrogation or contribution and is penal in nature (*Wanack v. Michels*, 215 Ill. 87, 94-96), and since on principle, indemnity or contribution or subrogation is allowed only to innocent parties (*Wanack v. Michels, supra; Geneva Const. Co.*

*v. Martin Transfer & Storage Co.*, 4 Ill.2d 273, 282-383), we do not believe that it would be consistent with the general equitable principles which sanction the third-party action, nor consistent with the objectives of the Dramshop Act to allow the third-party procedure attempted in the case before us (*Economy Auto Ins. Co. v. Brown*, 334 Ill.App. 579, 586-589; *People v. Metropolitan Casualty Ins. Co. of New York*, 339 Ill.App. 514, 518-519)."

Recently the Appellate Court for the Fourth District has held contrawise in two cases, *Geocaris v. Bangs* (written in the First District, 1968), 91 Ill.App.2d 81, 234 N.E.2d 17; and *Walker v. Service Liquor Store, Inc.* (1970), 120 Ill.App.2d 112, 255 N.E.2d 613. Both cases were decided on the pleadings. In the *Geocaris* case the action of the intoxicated person was characterized as "intentional and malicious," and in the *Walker* case as "willful, intentional, deliberate and actively tortious." The court rejected the holding of the *Coffey* case, finding that the evidence could show that the action of the dram shop operator and owner was passive while that of the intoxicated person was actively (even willfully, intentionally, and deliberately) tortious, and under the present posture of the Illinois law of indemnity as exemplified in *Miller v. DeWitt*, 37 Ill.2d 273, 226 N.E.2d 630, and *Sargent v. Interstate Bakeries, Inc.*, 86 Ill.App.2d 187, 229 N.E.2d 769, such complaints stated a good cause of action and, as a matter of law, the dram shop owner and keeper could seek indemnification from the intoxicated person.

■■ We have carefully considered the issues presented and the rationale employed in the *Coffey* case on the one hand and the *Geocaris* and *Walker* cases on the other. With due regard to our colleagues of the Fourth District we have concluded that the earlier opinion of this court in the *Coffey* case should be adhered to as the correct expression of the law and the public policy of Illinois. We consider the *Geocaris* and *Walker* cases to be a judicial repudiation of the public policy of this state as expressed in the Dram Shop Act and decisional law (see the *Coffey* case, *supra; Cunningham v. Brown*, 22 Ill.2d 23, 174 N.E.2d 153; Illinois Law Forum, Volume 1958, No. 2, P. 175 *et seq.*) and that they improperly permit a possible evasion of the penal liability imposed upon operators and owners of dramshops by the Illinois Dram Shop Act.

■■ By the very nature of the dram shop action, and in the sense of the "active-passive" concept of indemnity law, the intoxicated person will always be "active" and the dramshop operator or owner "passive." Even if the conduct of the intoxicated person be characterized as willful, reckless, or intentional, the parallel remains. It is in this context that we believe the law of indemnity is misplaced in dramshop cases. The proscribed act of causing intoxication is entirely separable from the injury

causing act. The Act denominates as wrong-doers operators and owners of dramshops who cause in whole or part the intoxication of persons who subsequently cause injury or damage to others. The character of the liability is such that it is an ultimate liability fixed by public policy on an industry. We think it is the plain intent of the statute that such liability cannot be shifted but must reside where public policy decreed that it be placed. The underlying rationale is that the intoxicated person who negligently or willfully inflicts harm on another would not have done so but for his intoxication.

■■ We recognize that the law pertaining to indemnity has undergone much consideration and development subsequent to the *Coffey* case, and that Illinois now recognizes a difference in the kind and quality of tortious conduct in continuing to prohibit contribution among joint tort-feasors but nevertheless allowing a passively negligent tort-feasor to obtain indemnification from an actively negligent tort-feasor. (*Miller v. DeWitt, supra; Sargent v. Interstate Bakeries, Inc., supra.*) But the development of the law of indemnity in tort cases has not served to change the public policy attending the enactment of the Dram Shop Act nor the penal nature of the liability it imposes. In the *Walker* case, *supra,* the court states: "We find it difficult to suggest that the liquor store and Clem were concurring tort-feasors." We agree, and suggest that neither the Dram Shop Act nor decisional law are prefaced upon the concept that dramshop operators and owners are concurring or joint tort-feasors. The liability of the dramshop operator or owner on the one hand, and that of the intoxicated person on the other, stems from totally independent roots. One is the act of the dramshop operator in dispensing intoxicating liquor which causes in whole or part the intoxication of another; the other is the negligent (or even willful or intentional) conduct of the intoxicated person in causing injury or damage to a third party.

To justify the indemnity action by saying that the rights of the injured party are not diminished by allowing indemnity in this instance ignores the liability aspects of the Act. Its concern is not only with the rights of the injured party against the intoxicated person for he has always had his remedy against the perpetrator without recourse to the Dram Shop Act, but with the fixation of liability for injury or damage flowing from the conduct of the alcoholic liquor trade.

Throughout the case law runs the common thread that due to lack of financial responsibility of the intoxicated person the Dram Shop Act may be the only practical remedy. Why then should the liquor trade be able to transfer its liability by seeking indemnity based on fault? Our Supreme Court has already determined that a "violation" of the Dram

Shop Act is a willful act. See *Wanack v. Michels,* 215 Ill. 87, 74 N.E. 84, where it is stated:

> "There could be no contribution as between C. L. Wanack and the appellee, Peter Michels, because they are both wrong-doers. It is a general rule that there is no right of contribution as between tort feasors. (*Nelson v. Cook,* 17 Ill. 443; 3 Pomeroy's Eq. Jur. sec. 1418, note I) * * * And although this rule is only applied to cases of intentional and conscious wrongdoing, (Ibid.) yet it cannot be said that, in the case at bar, the wrongdoing of the owner of the premises, who leases them with permission to the occupant to sell intoxicating liquor thereon, and with knowledge that such liquor is sold thereon, is not intentional. The owner, under the circumstances mentioned in the statute, must be regarded as committing the tortious act with guilty intent. Hence, there can be no contribution between the occupant and the owner under the circumstances stated."

The trial court should not have dismissed the third-party complaint unless it appeared from the pleadings that in no event would the dramshop operators and owners have an action over against the intoxicated person. (*Miller v. DeWitt, supra.*) For the reasons stated we believe the trial court was correct in dismissing the third-party complaint and should be affirmed.

Judgment affirmed.

G. MORAN, J., concurs.

Mr. PRESIDING JUSTICE EBERSPACHER dissenting:

As has the Fourth District Appellate Court in *Geocaris v. Bangs,* 91 Ill.App.2d 81, 243 N.E.2d 17, (written for the First District, 1968) and *Walker v. Service Liquor Store, Inc.* (1970), 120 Ill.App.2d 112, 255 N.E.2d 613, I would reject the holding of *Coffey v. ABC Liquor Stores* (1957), 13 Ill.App.2d 510, 142 N.E.2d 705, a case decided before the leading cases stating the present posture of the Illinois Law of Indemnity such as *Sargent v. Interstate Bakeries, Inc.,* 86 Ill.App.2d 186, 229 N.E.2d 767 (1967) and *Miller v. DeWitt* 37 Ill.2d 273, 226 N.E.2d 630 (1967).

As is said in Illinois Dramshop Briefs, 2nd Ed. (1960) by John Alan Appelman in discussing the *Coffey* decision, p. 221,

> "The court held that dramshop operators could not bring in the wrongdoer as a third-party defendant, but rather skitters around the edges in finding a reason for its ruling. At one point, it seems to imply that the sale or gift of alcoholic liquor is a tort, and that, therefore, one tort feasor cannot sue another. It then also implies

that the Dramshop Act is penal in nature, citing cases under the old Act which was penal in nature, and that under this rule the third-party plaintiffs could not be regarded as innocent parties entitled to recover. It finally concluded that the Act expresses the public policy of the state, and allowance of the claim for indemnification would violate such public policy.

The reasoning of the court appears to be unsound. The statute imposes a purely statutory liability, irrespective of fault or any other considerations. While the statute is a desirable one, it places a heavy burden upon the industry, and creates many situations where collusion may well occur between the wrongdoer attempting to escape responsibility for his acts and the one seeking recovery. In many situations, if such actions were permitted to lie, a dramshop operator could not recover against such person, by reason of actually being at fault, such as by selling to a minor, to an intoxicated person, or other situations where a loss may be foreseeable. However, he should have a right to pose this problem directly to a jury, to take into consideration the entire situation as it exists. It would help to militate against situations of fraud or collusion and would tend to promote the public policy expressed by statute in granting such causes of action in the first instance. It would also help to reduce the number of situations where settlements are made with automobile carriers for partial relief, which then encourages suits under the Dramshop Act, leading to a congestion of court calendars. This could tend to encourage the disposition of all claims in a single suit. Rather than contravening public policy, it would seem to be consistent therewith."

It is to be especially noted that in *Coffey* the Court said "indemnity * * * is allowed only to innocent parties". Few, would today contend for the correctness of that statement, in light of the modern indemnity cases, but yet it was on the basis of that principal that the *Coffey* Court determined that since the Act does not grant any rights of indemnity, it would be inconsistent with the objectives of the Act to allow indemnification. Since *Miller v. DeWitt, supra,* one need not be an innocent party to be entitled to indemnity. The *Coffey* Court failed to point out, as has been done in both *Geocaris* and *Walker,* that neither does the Act preclude indemnification, and thus its precise terms do not answer the problem. In arriving at its conclusion, the *Coffey* Court relied on the 1905 case of *Wanack v. Michels,* 215 Ill. 87, 74 N.E. 84; and the majority of this Court appears to have relied on the same obsolescent language of *Wanack* to determine that the liquor trade should not be able "to transfer its liability by seeking indemnity based on fault". At its best, I would

treat the language which the majority of this Court has quoted from *Wanack* as a naked remnant of a by gone age, particularly in view of the fact that the majority considers that *Miller v. DeWitt, supra,* is authority for the proposition that, "The trial court should not have dismissed the third party complaint unless it appeared from the pleadings that in no event would the dramshop operators and owners have an action over against the intoxicated person".

Our first civil remedy statute with reference to the sale of "intoxicating liquors" was enacted in 1874. At that time it was strictly construed and regarded as highly penal in character. When, in 1934, re-enacted after the end of Prohibition, it was determined that such statute was remedial; and by the express provisions of the first section of the Act, the entire Act dealing with Liquor Control, is to be liberally construed. Since the section of the Statute that provides for the recovery for a victim, ch. 43, par. 135, is remedial, it should be given the liberal construction provided by ch. 43, par. 94, but even under a liberal construction Courts should not construe it beyond the intent of the General Assembly. (See *New Amsterdam Casualty Co. v. Gerin* (1956), 9 Ill.App.2d 545, 133 N.E.2d 723; *Thompson v. Capasso* (1959), 21 Ill.App.2d 1, 157 N.E.2d 75; *Nechi v. Daley* (1963), 40 Ill.App.2d 326, 188 N.E.2d 326.) An examination of the language used in par. 135 of the Act discloses nothing from which it can be reasonably inferred that the General Assembly intended that section to be penal in nature and the most that can be concluded from that language is that it is punitive in that it imposes liability on an owner and operator without fault, and despite the numerous opinions dealing with the construction of that section, none have ever pointed out in what respect or by what language the General Assembly intended the section to be penal, other than to say that it imposed liability without fault. From the language of the section, with its numerous amendments including removal of the original exemplary damages provision, it appears that what the General Assembly is fundamentally providing for is a source from which compensation for a victim could be recovered as a practical matter. Even the majority of this Court recognizes that "Throughout the case law runs the common thread that due to lack of financial responsibility of the intoxicated person the Dram Shop Act may be the only practical remedy". Nothing in the law of Illinois prevents a victim, where as a practical matter, the victim can recover from the intoxicated person, from doing so directly, so query, why should the law prevent, where practical, a victim from recovering indirectly from the intoxicated person? To bar such indirect recovery opens the door to a certain cooperation between the intoxicated person and his victim which may amount to collusion and fraud, with the dram shop owner and his tenant suffering

for the sins of the intoxicated person, and a reward to the intoxicated person for his original indiscretion and guilt.

A common and generally accepted concept in our law is that the law searches constantly for the imposition of burden commensurate with fault, as was pointed out in *Walker* and *Sargent, supra,* and in *Miller v. DeWitt, supra.* Our Supreme Court in discussing liability under the Structural Work Act, the purpose of which is to afford a certain class of workers who are the victims of a violation of that Act a practical remedy, said:

> "The lesser delinquent, if held accountable by the Plaintiff, can *transfer its statutory liability* to the active delinquent, whose dereliction from duty brought about the Plaintiff's injury." (Italics furnished.)

That Act embraces public policy to furnish a practical remedy and to furnish a high degree of protection to those who work in high places, just as the Dram Shop Act embraces public policy to furnish a practical remedy and a high degree of protection to those who are injured by an intoxicated person.

It is unfortunate that Illinois Courts in construing our amended Act of 1934, have become confused between the 1874 Act and the 1934 Act as amended. Even our Supreme Court has said in a single sentence, that the Statute is both to be strictly and liberally construed. In *Howlett v. Doglio* (1949), 402 Ill. 311 at 318, 83 N.E.2d 708 it said, "Although the Dram Shop Act is penal in character and should be strictly construed, [citing decisions under the 1874 Act] the legislation is, at the same time, remedial and should be so construed as to suppress the mischief and advance the remedy. [Citing decisions under the 1934 Act.]" The same statement has been reiterated in numerous Appellate Court decisions, to the detriment of the clarity of dramshop law. Liberal construction is specifically provided by the Act itself, and it is unfortunate that there was no petition for leave to appeal from either *Geocaris* or *Walker,* but the majority opinion herein being in direct conflict with decisions of both the First and Fourth Districts may present an opportunity for clarification.

In the present case we have only the pleadings before us; from them we find the third-party plaintiffs are alleged to have sold intoxicants to third-party defendants whose intoxication was caused in whole or in part by the drinking of those intoxicants and the third-party defendants are alleged in their intoxicated condition to have driven an automobile into a house resulting in the death of a child. There is no allegation that third-party defendants were chronic alcoholics or minors to whom a sale would have been prohibited. From that factual situation, it is either concluded by the majority, that those allegedly engaged in a legal enter-

prise, one which has been considered legal throughout the history of this land except for approximately 15 years of Prohibition, are at least as delinquent as those who have allegedly committed a homicide, or that the standard of delinquency applied to those engaged in every other legitimate business is not applicable to those engaged in the legal sale of intoxicants without any statutory, case law or constitutional authority for the discrimination between those engaged in one legitimate business and all others.

To construe Sec. 135, which neither provides nor bars indemnification, as denying indemnification will not "suppress any mischief", for the possibility of indemnification as a practical matter is hardly sufficient to change the conduct of owners and operators in selecting to whom they make their sales, nor will it relieve them as a practical matter from either the expense of defending themselves in the Courts or insuring themselves against liability. To allow indemnification would be a step in holding those whose tortious conduct occurs during intoxication to the same responsibility as is applied to those whose tortious conduct occurs during sobriety, against whom third-party actions are enforceable.