(No. 44670.—

DOROTHY WESSEL, Admr., *et al.* v. CARMI ELKS HOME, INC., *et al.*, Appellants.—(Emily Rice *et al.*, Appellees.)

*Opinion filed January 26, 1973.*

128

GOLDENHERSH, J., took no part.
DAVIS, J., concurring.
WARD, J., dissenting.

J. C. MITCHELL and W. A. ARMSTRONG, both of Marion, for appellants.

GOSNELL, BENECKI & QUINDRY, LTD., of Lawrenceville, and PEARCE & FECHTIG, and CONGER & ELLIOTT, both of Carmi (MAURICE GOSNELL and IVAN A. ELLIOTT, JR., of counsel), for appellees.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

This action was commenced in the circuit court of White County based upon an alleged violation of section 14 of article VI of the Liquor Control Act, more commonly referred to as the Dramshop Act (Ill. Rev. Stat. 1967, ch. 43, par. 135.) Plaintiffs sought to recover damages from defendants Carmi Elks Home, Inc. (a tavern), Carl R. Barbre, d/b/a The Town House (a tavern), and Bertis Williams, the owner of the premises in which the latter establishment is located. The multicount complaint in substance alleged that Emily Rice and Jesse Cox had consumed alcoholic beverages at these taverns and that either or the two, while in an intoxicated condition, had driven an automobile through the side of a house killing one occupant, injurying another and causing property damage.

Defendants answered, denying liability, and then filed a third-party complaint against Rice and Cox based upon a theory of implied indemnity for any damages, costs of suit and attorneys fees which might result from plaintiffs' action. The third-party complaint charged that either Rice or Cox, rather than defendants, was the "active and primary cause" of any damage to plaintiffs, and that such

damage did not arise out of any wrongful act or misconduct by any of the defendants, whose liability, if any, arising from any violation of the Liquor Control Act was said to be "purely secondary."

A motion to dismiss the third-party complaint was granted by the trial court and the appellate court, one justice dissenting, affirmed. (*Wessel v. Carmi Elks Home, Inc. (1971), 133 Ill. App. 2d 902, 272 N.E.2d 416.*) Thereafter, upon defendants' petition, the appellate court issued a certificate of importance. 50 Ill.2d R. 316.

The sole issue presented for review is whether one who may incur dramshop liability because of the sale or gift of intoxicating liquors to a third party has the right to seek indemnification from the latter whose activity is alleged to be the primary or active cause of the damages. This issue has caused several appellate courts to reach divergent results.

In *Coffey v. ABC Liquor Stores, Inc. (1957), 13 Ill. App. 2d 510* (leave to appeal denied, 11 Ill.2d 629), a dramshop action was brought against four tavern operators seeking damages allegedly caused when plaintiff was assaulted by one who had become intoxicated. Several defendants filed a third-party complaint against the alleged assailant, which the trial court dismissed. The appellate court affirmed, reasoning that only an innocent party could seek indemnification, thus excluding a tavern operator who, by the terms of the Act, is a tortfeasor. It further concluded that the Act was penal in nature and to allow indemnity would violate equitable principles and public policy.

In the present case the appellate court adopted the rationale of *Coffey*. The majority was of the opinion that to hold otherwise and extend the right of indemnity to the tavern owners or operators would frustrate the penal nature of the Act and its underlying public policy, *i.e.*, to place the ultimate burden upon the liquor industry for injuries caused by intoxicated patrons.

Two recent appellate decisions, however, have reached the opposite conclusion under factual situations analogous to *Coffey,* and have permitted the right to seek indemnification to those who may be liable in a dramshop action as against one to whom they have sold or given alcoholic beverages. In *Geocaris v. Bangs (1968), 91 Ill. App. 2d 81,* the court did not accept the conclusion reached in the *Coffey* decision but applied the rationale of another appellate decision (*Sargent v. Interstate Bakeries, Inc. (1967), 86 Ill. App. 2d 187*) which held that a negligent party may recover in an action for indemnity against the party whose negligence established a greater degree of culpability for the injury.

Similarly, in *Walker v. Service Liquor Store, Inc. (1970), 120 Ill. App. 2d 112,* the appellate court found that the Liquor Control Act neither allowed nor precluded indemnification and, as such, reference to it would not be constructive. The court then stated that Illinois "does allow a passively negligent tort-feasor to obtain indemnification from an actively negligent tort-feasor. *Miller v. DeWitt, 37 Ill.2d 273, 226 N.E.2d 630.*" (120 Ill. App. 2d at 115.) Based on this conclusion the court adhered to its prior decision in *Georcaris* and reversed the trial court's dismissal of a third-party complaint seeking indemnity. However, in neither *Geocaris* nor *Walker* was further review sought and the present case now affords this court the first opportunity to consider whether indemnity is proper in a dramshop action in light of our recent decisions which recognized the right of implied indemnity founded upon a qualitative comparison of the tortfeasors' conduct. *Miller v. DeWitt (1967), 37 Ill.2d 273; Chicago and Illinois Midland Ry. Co. v. Evans Construction Co. (1965), 32 Ill.2d 600.*

After examination of the *Geocaris* and *Walker* decisions, upon which defendants herein place substantial reliance, we believe that the reasoning of those decisions is inappropriate. Both basically relied upon the *Sargent* case

in which the injured party was struck by a vehicle. The original action in that case was commenced upon the theory of common-law negligence. In the present case the dramshop action which occasioned the claim for indemnity is *sui generis.* (*Graham v. U.S. Grant Post No. 2665, V.F.W., (1969), 43 Ill.2d 1, 7.*) Therefore, it may be said that other decisions which have broadened the concept of implied indemnity are distinguishable.

Policy considerations, as defendants concede, are of substantial importance in this matter. As repeatedly stated by this court, the statute, as applied to a dramshop owner or operator, is penal in character. (*Howlett v. Doglio (1949), 402 Ill. 311, 318; Moran v. Katsinas (1959), 16 Ill.2d 169, 174.*) This penal nature is further emphasized by the liability limitations contained therein.

Moreover, the Liquor Control Act specifically states that it is designed to protect health, safety and welfare and to foster and promote "temperance in the consumption of alcoholic liquors *** by sound and careful control and regulation of the manufacture, sale and distribution of alcoholic liquors." (Ill. Rev. Stat. 1967, ch. 43, par. 94.) To this extent the statute provides a basis for the discipline of dramshop operators and owners for their indiscriminate sale of liquor and the evils resulting therefrom. (See *Dworak ex rel. Allstate Insurance Co. v. Tempel (1959), 17 Ill.2d 181.*) As realistically viewed in *Dworak* this discipline may be of an indirect nature which arises from the owner's or operator's fear of cancellation of insurance or prohibitive premiums.

These factors demonstrate that a substantial burden has been placed upon those engaged in the liquor industry. Such responsibility, although possibly more stringent than that imposed upon other business ventures, is permissible as a proper exercise of the State's regulatory control of intoxicating liquors. (*Weisberg v. Taylor (1951), 409 Ill. 384, 387; California v. La Rue (1972), 409 U.S. 109, 34 L. Ed. 2d 342, 93 S. Ct. 390.*) We believe that by

permitting the extension of the right of indemnity in this case, the public policy expressed in the statute would be frustrated and its disciplinary feature diminished. Absent a clear legislative mandate to the contrary, the cost accruing for a violation of the statute should be borne by those profiting from the sale of liquor to the public who enter such commercial enterprises with full knowledge of this attendant liability.

Defendants argue, however, that recent legislative history relating to section 14 of article VI of the Liquor Control Act indicates that the legislature has endeavored to mitigate dramshop keepers' liability by refusing to increase the maximum limits of recovery and by deleting the phrase "in whole or in part" from section 14. (P.A. 77—1186, approved August 19, 1971; Ill. Rev. Stat. 1971, ch. 43, par. 135.) They further contend that the legislature did not attempt to modify the *Geocaris* and *Walker* decisions when the 1971 amendment to section 14 was adopted. Thus they conclude that the legislature intended to allow a right to indemnity based upon qualitative fault in a dramshop action.

The aforementioned factors do not sufficiently demonstrate such intent. Examination of recent legislative history reveals various efforts to lessen or increase the amount of recoverable damages. (*E.g.,* Legislative Synopsis and Digest: 76th G.A., H.B. 405; 73rd G.A., H.B. 1017.) The failure of the legislature to increase the statutory limit of recovery may have been prompted by a number of reasonable policy considerations, and the intent which defendants seek to engraft upon these activities is unconvincing.

Moreover, the 1971 amendment to section 14, which defendants deem significant, does not support their claim. Prior to its adoption this amendment had been proposed at various legislative sessions, several of which pre-dated any judicial consideration of the issue now under review. (*E.g.,* Legislative Synopsis and Digest: 76th G.A., H.B. 322; 75th

G.A., H.B. 1148; 74th G.A., H.B. 2211; 66th G.A., S.B. 72; 65th G.A., H.B. 765.) Finally, the fact that the legislature did not specifically act to curtail the effect of the *Geocaris* and *Walker* decisions is not of itself a significantly controlling factor, for a diametrically opposite conclusion may also be drawn from legislative inaction after the *Coffey* case.

Therefore, we hold that as a matter of law those who may incur liability under section 14 of article VI of the Liquor Control Act may not seek indemnity from one who, being in an intoxicated condition, committed a tortious act which gives rise to the dramshop action. The judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.

MR. JUSTICE DAVIS, concurring:

I concur with the view expressed by the majority. Liability under the Dramshop Act is not premised upon fault of negligence. (*Graham v. U.S. Grant Post No. 2665, V.F.W., (1969), 43 Ill.2d 1, 7; Cunningham v. Brown (1961), 22 Ill.2d 23, 26.*) Prior to the Act, the dramshop owner or operator suffered no liability resulting from the mere sale of intoxicating liquor to an ordinary person. The Act was the result of the temperance movement and its demand that those who profit from the sale of intoxicating liquor should bear the burden of the evils or damages it causes. (*Cunningham v. Brown (1961), 22 Ill.2d 23, 29;* Voelker, Parties to Dram Shop Actions, 1958 U. Ill. L.F. 207, 214.) As a result, the Act imposed strict liability upon those engaged in the liquor traffic.

In view of the legislative purpose of the Act, it would be anomalous to weigh the dramshop liability with that of the intoxicated person for purposes of indemnity in the sense of passive versus active negligence or upon degrees of

fault. Since the legislature has imposed strict liability for causing intoxication where the intoxicated person subsequently injures another, the causing of intoxication should not be viewed as a mere passive act or one of lesser fault than the act of the intoxicated person.

Presumably, the theory of such strict liability is that the effects of intoxication upon a person are sufficiently severe to warrant a drastic remedy. Under this legislative rationale, we should not permit the ultimate responsibility for the sale or gift of intoxicating liquor to be minimized qualitatively by the conduct of the intoxicated person.

I do not disagree with the general philosophy that indemnity should be available to place the ultimate liability upon the one who is primarily responsible for a wrong. Indemnity should not be employed, however, where it would result in frustration of the expressed public policy of this State. I cannot but conclude that the Dram Shop Act is a legislative expression that a part of the cost of doing business in the liquor trade is the exposure to liability under the Act. To permit this cost to be passed on to another, who is not in the trade or liable under the Act, is contrary to its intended purpose. It is no answer to suggest that, in any event, the ultimate responsibility is shifted by the dramshop owner to his insurance carrier.

Further, it seems inappropriate to characterize the type of liability imposed by the Act as the result of either active or passive negligence. Negligence is not involved and the strict liability of those engaged in liquor traffic should end with the Dram Shop Act.

MR. JUSTICE WARD, dissenting:

I prefer the result in *Geocaris v. Bangs, 91 Ill. App. 2d 81,* and in *Walker v. Service Liquor Store, Inc., 120 Ill. App. 2d 112,* to the conclusion the majority reaches here.

This court has often cited the judge-made rule forbidding contribution between joint tortfeasors guilty of intentional wrongdoing. (*Muhlbauer v. Kruzel, 39 Ill.2d*

226, 230; *Miller v. DeWitt, 37 Ill.2d 273, 289-290; Chicago and Illinois Midland Ry. Co. v. Evans Construction Co., 32 Ill.2d 600, 603; Skala v. Lehon, 343 Ill. 602, 605; Griffiths & Son Co. v. National Fireproofing Co., 310 Ill. 331, 339; Wanach v. Michels, 215 Ill. 87, 94-95.*) We nevertheless indicated in the *Chicago and Illinois Midland Ry. Co.* case, that although the evidence there failed to support such a claim, a person whose negligence was responsible for a dangerous condition causing injury could be required to indemnify one whose negligence consisted only of a failure to discover and correct that condition. And in *Miller v. DeWitt,* where persons injured by the collapse of a roof inadequately shored by a contractor recovered damages from the supervising architects on a complaint charging both common-law negligence and a violation of the Structural Work Act (Ill. Rev. Stat. 1971, ch. 48, pars. 60 through 69), we held that it was erroneous to dismiss on motion a third-party complaint in which the architects sought indemnification from the contractor. Our decision rested on the fact that under the pleadings it was possible that the jury's verdict could have been based on a finding that the injury to plaintiffs had been directly caused by the improper construction methods employed by the contractor, while the architects' liability rested only in their failure to halt work on the job. In such a case, we held that a jury could find that the architects were passive tortfeasors while the contractor was an active tortfeasor. With respect to liability under the Structural Work Act, which does not hinge on negligence, we also held that the architects, as the persons responsible for supervision of the entire construction project, could be found to be less culpable that the contractor, whose direct conduct had caused the injury. 37 Ill.2d at 290-292.

While there does not exist between a dramshop operator and his customer the pre-existing contractual relationship or community of interest exhibited by the *Chicago and Illinois Midland Ry. Co.* and *Miller* cases, I

consider that the underlying principle illustrated by those decisions of imposing liability on the party principally at fault is applicable here. *Cf.* Restatement of the Law of Restitution, sec. 96.

I would note that prior to the enactment of section 14 of article VI of the Liquor Control Act there was no recognition at common law of any liability based on fault for the sale of liquor, at least to a purchaser who was a "strong and able-bodied man" (*Cruse v. Aden, 127 Ill. 231, 234; Howlett v. Doglio, 402 Ill. 311, 318*), or even an "ordinary" man (*Cunningham v. Brown, 22 Ill.2d 23, 29-30*). Liability under section 14 of article VI, likewise, does not rest on negligence or other fault on the part of the dramshop operator or the owner of the premises; the liability is made absolute by the Act. (*Cunningham v. Brown, 22 Ill.2d 23, 26; Graham v. General U.S. Grant Post No. 2665, V.F.W., 43 Ill.2d 1, 7.*) Moreover, at the time when this cause of action arose and the complaint was filed, prior to the amendment of the Act in 1971 by Public Law 77—1186, liability required only that the dramshop operator had furnished liquor which "causes the intoxication, in whole or in part." (Ill. Rev. Stat. 1969, ch. 43, par. 135.) It was therefore not necessary to establish that the liquor furnished by any defendant was the sole or even the predominant factor contributing to the intoxication. Nor does the liability of the owner of premises require any participation in or even knowledge of the sale in question. (*Graham v. General U.S. Grant Post No. 2665, V.F.W., 43 Ill.2d 1.*) While liability does not attach under the Act for injuries committed by the intoxicated person unless that person's actions were tortious in character (*McDonald v. Risch, 41 Ill.2d 242*), there is, of course, no requirement that the dramshop operator have participated in those tortious actions or have been in a position to reasonably foresee their occurrence.

A major purpose of the Liquor Control Act is to provide an additional remedy to a person injured by an

intoxicated person who may not himself by financially responsible, as the appellate court here recognized. In this regard the Act resembles the Structural Work Act, which was designed to impose upon the owners of property a liability for injuries caused by extra-hazardous structures, from which liability they had previously been insulated if the work had been done by an independent contractor. (*Griffiths & Son Co. v. National Fireproofing Co., 310 Ill. 331, 335.*) We held in *Griffiths* that an agreement by a subcontractor to indemnify a general contractor for damages paid by the latter in consequence of injuries caused by an unsafe scaffold built by the former was not contrary to public policy, and, as we have seen, a similar shifting of liability under the Structural Work Act was permitted in *Miller v. DeWitt, 37 Ill.2d 273,* even without any express indemnification agreement. I am not persuaded that there are any distinctive features of the Liquor Control Act which should preclude a similar shifting of liability. I would add, as was observed in *Dworak v. Tempel, 17 Ill.2d 181, 191,* that, practically speaking, the ultimate loss in many dramshop cases will be borne, not by the dramshop operator, but by his insurance carrier.

I am not dissuaded from disagreement with the majority by the argument that indemnification must be ruled out because the statute is "penal." The Act may, of course, loosely be characterized as "penal" in the sense that it imposes a liability not existing at common law and in the sense that the liability imposed is liability without fault. In fact, a description of the Act as penal has generally been employed, not for the purpose of imposing liability, but, on the contrary, as a justification for limiting the applicability of the Act (*Cruse v. Aden, 127 Ill. 231*), or of limiting the type of damages recoverable under it. *Freese v. Tripp, 70 Ill. 496; Howlett v. Doglio, 402 Ill. 311.*

One is not, of course, called upon at this stage of the proceeding to forecast what the evidence may show. Here

138

it might have shown inconsequential and "purely secondary" activities by the third-party plaintiffs and that the drinking, as a realistic matter, by the third-party defendants had been in their own homes, for example. And of course it might have shown otherwise. In order to sustain the dismissal of the third-party complaint the court must be able to determine from all the pleadings, taking into consideration their possible amendment, that in no event could the third-party plaintiffs have an action over against the third-party defendants.