(No. 5301—)

HOLIDAY EDWARDSVILLE HOLDING COMPANY and BLUFF ROAD DEVELOPMENT COMPANY, Claimant, *vs*. STATE OF ILLINOIS, Respondent.

*Opinion filed October 12, 1971.*

JOHN F. O'CONNELL, Attorney for Claimants.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

HOLDERMAN, J.

This is an action whereby Holiday Edwardsville Holding Company and Bluff Road Development Company seek to be indemnified for sums paid out by them in settlement of a personal injury suit. The personal injury action was brought by Mildred Stewart against the claimants for injuries received by her on March 30, 1963. On that evening, around 11:00 o'clock she was driving a motor vehicle on a State Highway near the intersection of Illinois State Route 157 and U.S. By-Pass 66, in Madison County, Illinois. It was raining heavily. As she approached the intersection, her car skidded and spun around, striking a light standard on the east shoulder of the highway. The highway was in a very hazardous condition due to the large amount of water and mud that was on it.

(Here are the facts.) About 4 months before the accident, the claimants, who owned the property adjacent to the highway, commenced work on the land preparatory to making an improvement. They scarified the top and the sides of a hill, removing brush and grass. While this work was going on, the Field Engineer of the Department of Public Works and Buildings, Division of Highways, informed the claimants that what they were doing would result in large amounts of mud and silt being washed onto the highway whenever it rained.

The highway and the drains had previously been constructed to handle normal amounts of drainage. Apparently there had been no difficulty previous to the time the claimants scarified their adjoining land. The area scarified was about 1,000 feet wide and a quarter of a mile along the highway with a slope of about a 45° angle. The Field Engineer suggested to claimants that they could leave strips of vegetation to hold back the drainage run-off and that they could terrace the hillside. Claimants refused to follow the advice or suggestions of the Field Engineer.

The claimants admit in their argument that there is no dispute but what the water and silt came from the claimants' land and that there had been an increased flow of water and dirt after the claimants had scarified the hill. They further admit that they would be liable to parties injured for injuries received from the hazardous condition of the highway. They argue, however, that the conduct of the claimants was harmless, and that the injury to the motorist would never had occurred if the State had performed its duty of maintaining the highway ditches and culverts or of warning motorists.

In her suit against the claimants, Mildred Stewart claimed that claimants were negligent in several respects. She claimed that the claimants caused the mud to

accumulate on the roadway; that they graded and excavated a hill adjacent to the highway in such a manner as to cause it to drain out onto the highway. She also alleged that the claimants were negligent in failing to warn her of the dangerous condition, and that they failed to have the dangerous condition corrected by removing the dirt and mud.

There is no dispute in the case as to how the accident happened. The case went to trial and after 2 days, settlement was made by payment of $9,000.00 total to the injured motorist for her injuries. No question is raised (anyway) on the good faith of claimants in making the settlement, nor do we raise any such question.

Claimants' theory here is that they were "passively" negligent only and that the State of Illinois was "actively" negligent and that therefore claimants have a right to be indemnified for the amounts paid out by them in settlement.

The primary issue involved before this Court is whether or not under the facts of the case the claimants were "passively" negligent insofar as the injured party was concerned and whether or not under the facts of the case the State of Illinois was "actively" negligent. If claimants were actively negligent, they have no right of indemnity.

It is clear that in Illinois there is no contribution among joint tort-feasors. However a tort feasor who is only "passively" negligent is entitled to indemnification from a tort feasor who is "actively" negligent. *Griffiths and Son Co.* vs. *National Fireproofing Co.*, 310 Ill. 331, 141 N.E. 739.

The distinction between "active" and "passive" negligence has been said to be one which is "court made" and that there is no single comprehensive definition thereof; also, it is said that the cases have been decided on

the facts of each case. See *Topel* vs. *Porter*, 237 N.E. 2d 711. The Topel case held a lessee "actively" negligent in a situation where its negligence was failure to have a safety test of an elevator. In other words, negligence by omission. In the Topel case also, the Court quoted from *McFall* vs. *Compagnie Maritime Belge*, 304 N.Y. 314, 107 N.E. 2d. 463, where the New York Court said, quoted Page 472 of 107 N.E. 2d. that active negligence could consist of either a fault of *omission* or one of *commission*.

This Court is called upon to determine whether or not the facts were such that it could be said that the claimants here were actively negligent or passively negligent. If they were actively negligent, they would have no right of indemnification.

This Court holds that the claimants were "actively" negligent and therefore would have no right to indemnity from the State.

We need not, therefore, concern ourselves with any other issue in the case.