YOLANDA JARDINE, Plaintiff-Appellant, *v.* ARTHUR RUBLOFF *et al.*, d/b/a Carl Sandburg Center, *et al.*, Defendants.—(ARTHUR RUBLOFF *et al.*, d/b/a Carl Sandburg Center, *et al.*, Counterplaintiffs-Appellants, *v.* OTIS ELEVATOR COMPANY, Counterdefendant-Appellee.)

First District (4th Division)   No. 76-1203

Opinion filed August 4, 1977.

John D. Hayes & Associates, of Chicago, for appellant Yolanda Jardine.

Sweeney and Riman, Ltd., of Chicago, for appellants Arthur Rubloff *et al.*

McKenna, Storer, Rowe, White & Farrug, of Chicago, for appellee.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook County. Yolanda Jardine (hereinafter "plaintiff") filed a complaint in the circuit court seeking recovery for personal injuries from Arthur Rubloff & Co. (hereinafter "Rubloff"), Arthur Rubloff, Stanley Goodfriend and George Dovenmuehle, co-partners d/b/a Carl Sandburg Center (hereinafter "Sandburg Center"), and Otis Elevator Company (hereinafter "Otis"). Sandburg Center and Rubloff then filed a countercomplaint seeking indemnity from Otis for any judgment entered against Sandburg Center in favor of the plaintiff. The jury returned a verdict in favor of the plaintiff and against Sandburg Center and Rubloff in the amount of $65,000, and against the plaintiff and in favor of Otis. The jury's verdict also rejected the counterclaim of Sandburg Center and Rubloff against Otis. Judgment was entered on the verdict, and thereafter post-trial motions of the plaintiff and counterplaintiffs, Sandburg Center and Rubloff, for judgment notwithstanding the verdict were denied. Plaintiff and counterplaintiffs now appeal the judgment in favor of Otis on the complaint and countercomplaint respectively.

The issues presented for review are (1) whether the jury's verdict in favor of Otis and against the plaintiff is contrary to the manifest weight of the evidence; and (2) whether the jury's verdict of the counterclaim in favor of Otis and against Sandburg Center and Rubloff is contrary to the manifest weight of the evidence.

Plaintiff's two-count complaint sought recovery for personal injuries sustained on December 12, 1969, when she fell while alighting from an elevator allegedly malfunctioning in its levelling system. Count I charged Rubloff and Sandburg Center with negligence in the ownership, operation, maintenance, management or control of the elevators thereby breaching their duty as common carriers of passengers. Count II charged Otis with negligence in designing, manufacturing, furnishing and installing a defective elevator system.

Sandburg Center then filed a two-count countercomplaint seeking indemnity from Otis for any judgment entered against them and in favor of plaintiff. Count I was predicated on a contractual agreement between the parties. Count II sought relief on the common law active-passive negligence theory. Otis admitted the existence of the agreement, denied the agreement supported a counterclaim and moved to strike count I, relying on page two of that agreement which provided:

"It is agreed that we (Otis) do not assume possession or control

of any part of the equipment but such remains yours exclusively as the owner (or Lessee) thereof * * * under no circumstances shall we be liable for consequential damages."

Otis also denied the material allegations of count II of the countercomplaint, yet admitted its relationship to the elevator system and its contractual relationship with the counterplaintiffs.

At trial, Yolanda Jardine testified she resided at D Building, 1355 North Sandburg Terrace, Chicago, Illinois, since 1963. Three elevators serviced that building, one being a service elevator. She utilized the service elevator every morning to take her dog out for a walk.

She last recalled observing non-levelling of the service elevator 30 to 45 days prior to her accident.

On December 12, 1969, while taking her dog down the service elevator, she noticed an unlevel condition of approximately one inch when the doors opened. As she started to lift her foot, the elevator jerked, pitching her forward and causing her to land against the wall opposite the elevator.

Susan Wyle testified that in November of 1969 she resided on the ninth floor of the Dickenson Building, located at 1355 Sandburg Terrace in Chicago, Illinois. The building was serviced by two passenger elevators and one freight or service elevator, and she had occasion to use all three of them in the latter part of 1969.

She testified that some time in November of 1969 she became aware that the service elevator stopped below floor level at the first floor of her building when she tripped getting out of the elevator and fell flat on her face. Sometime in December she noticed the condition again when she tripped while exiting. Her present recollection was the elevator was at least an inch below floor level during the period between the first and second time she tripped. Those two occasions were the only observations of anything at all unusual about the service elevator.

William Arbuthnot testified he was the elevator mechanic working for Otis and was responsible for the maintenance of the elevators at Sandburg Village in 1968 and 1969. Otis had a full maintenance contract with Sandburg Center to keep the elevators in good working condition and to make sure they functioned properly, which would include preventive maintenance and replacing equipment before trouble occurred with a particular piece of equipment. Any adjustments that would be required to be made to the equipment were performed only by the Otis mechanic. The Sandburg Center engineers were a different trade and had nothing to do as far as the work on the elevator equipment.

Arbuthnot further testified he serviced Sandburg Village on a 40-hour, five-day-a-week schedule excepting the period of time he serviced the four elevators at the Ambassador Hotel. He reported in at 8 a.m., and his quitting time was 4:30 p.m. Anything happening to the elevators after 4:30

p.m. resulted in Sandburg Center calling the Otis office or the answering service who would then get in touch with him or the next available maintenance man. It was the Otis maintenance office that determined who and how many men would be assigned to the Sandburg Village job. Arbuthnot testified he was the only person assigned to the Sandburg complex on a full-time basis for 1969, for maintenance of the elevators.

Arbuthnot stated he performed maintenance on each of the elevators in Building 1355 once a week. He had no particular routine, but did make sure he examined each building once a week and rode each elevator in each building once a week. He carried a check chart which provided a check list for each individual elevator. The check list recommended checking the parts of certain equipment once a week, once a month, quarterly or semi-annually. He checked the levelling operation once a week. A stopping contact exists for each direction on the cam (which is attached to the controller). As the elevator descends the contact comes off, the brake will be applied and the elevator will stop. If the elevator descends below floor level it will touch the up direction cam and then the brake is lifted and reapplied when a level condition is reached. If this cam is out of adjustment, it will not correct itself.

Arbuthnot recalled on December 15, 1969, at 8 a.m., reporting to work and being told to inspect the service elevator at 1355 Sandburg Terrace since there had been an accident there when someone tripped while exiting on the first floor. Shortly thereafter, Arbuthnot, accompanied by the operations manager for Sandburg Center, Mr. Downey, and a building engineer, checked the levelling of this service elevator and found it to be satisfactory. Mr. Downey and the building engineer left, although Arbuthnot remained to continue to observe the elevator. He noted the weight of additional people caused the elevator not to level as it should and he made an adjustment to the pie plate, or what Otis calls the cam. The Otis standard for levelling is within a half inch.

Plaintiff's Exhibit Number 7 received into evidence was the Otis contract with Sandburg Center, which provided in part:

"We will use trained men directly employed and supervised by us. They will be qualified to keep your equipment properly adjusted, and they will use all reasonable care to maintain the elevator equipment in proper and safe operating condition.

We will regularly and systematically examine, adjust, lubricate as required, and if conditions warrant, repair or replace: [various equipment and accessory equipment].

\* \* \*

All work is to be performed during our regular working hours of our regular working days unless otherwise specified below.

This contract includes emergency minor adjustment call back

service during regular working hours. In the event two (2) or more elevators in any building are shut down, overtime calls will be answered at no charge to you.

\* \* \*

Contract price $3,504.31 per month, payable monthly. \* \* \*"

Plaintiff's Exhibit Number 8 was the Otis maintenance check chart which instructed the Otis mechanic:

"On every visit \* \* \* it is essential that the following be properly executed.

1. See customer or his representatives; contact starter and operator.

2. Ride car, observing starting and stopping, operation of doors, gates, electronic detector or reversal devices; check for unusual noises.

3. Inspect all equipment in machine room paying particular attention to contacts, connector, reverse phase relays, operator voltage \* \* \*

4. Make corrections as indicated by these inspections or complaints received. Report required repairs or work not covered by abstract of contract to office. \* \* \*"

The jury returned a verdict in favor of the plaintiff and against Sandburg Center and Rubloff in the amount of $65,000 and against the plaintiff and in favor of Otis on counts II and III. The jury's verdict also rejected the counterclaim of Sandburg Center and Rubloff against Otis. Judgment was entered on the verdict and thereafter post-trial motions of plaintiff and counterplaintiffs for judgment notwithstanding the verdict or in the alternative a new trial were denied. Plaintiff and counterplaintiffs appeal the judgment entered on the jury's verdict in favor of Otis on the complaint and countercomplaint respectively.

Following the entry of judgment on the verdict and the denial of the post-trial motions, plaintiff entered into a type of loan agreement with defendants Rubloff and Sandburg Center in which those defendants would tender to the plaintiff the amount of $45,000 for and in consideration of those defendants' promise to refrain from pursuing an appeal against plaintiff while permitting the plaintiff to pursue her appeal against Otis.

■■ The first area of inquiry for this court is whether Otis was negligent. Otis admits it owed the plaintiff a duty of reasonable care, and even absent such admission Otis would be held to a duty of reasonable care because of its weekly inspection of the elevator, regardless of its contractual duty (see Nelson v. Union Wire Rope Corp. (1964), 31 Ill. 2d 69, 199 N.E.2d 769). Otis maintains, however, it properly performed its duty, as the jury so found. We disagree.

According to Sandburg Center's full maintenance contract with Otis, Otis promised to "use all reasonable care to maintain the elevator equipment in proper and safe operating condition." Otis' pattern of maintenance inspection included an examination of each and every elevator at least once a week. One of the items checked on these weekly inspections was the levelling of each elevator.

The plaintiff testified at trial that 30 to 45 days prior to her accident she observed the elevator in question non-levelling. Susan Wyle testified she noticed the non-levelling of the elevator by tripping on two separate occasions, within 45 days prior to the accident. William Arbuthnot, the elevator repairman working for Otis in Sandburg Village at the time of the accident, testified he observed the elevator on December 12, just after the accident, and found the elevator was not levelling as it should. Otis' standard of levelling is within a half inch. He also testified if the levelling system is out of adjustment, it will not correct itself.

The jury, at the trial, found the elevator system was in an unsafe condition on December 12, 1969, which proximately caused plaintiff's injury, while she was exercising due care.

By the testimony of the witnesses, the non-levelling condition of the elevator existed and went undiscovered at a time when Otis admits it conducted numerous weekly inspections. Since Otis knew or should have known, by such inspections, of the non-levelling condition of the elevator yet failed to repair said condition, the evidence manifestly favors a finding that Otis breached its obligation to the plaintiff. The contrary verdict of the jury, for Otis and against the plaintiff, must be set aside and judgment notwithstanding the verdict must be entered in plaintiff's favor.

■■ The next question presented concerns the counter-claim for indemnity. Rubloff and Sandburg Center claim the jury's verdict denying their counter-claim for indemnity against Otis is contrary to the manifest weight of the evidence.

An action for indemnity may be in the form of a contract action or may arise by operation of law as implied indemnity. No issue regarding contract indemnity is raised on appeal and the record shows the written contract for Otis' services specifically rejects any indemnity by contract, by providing, "* * * [U]nder no circumstances shall we [Otis] be liable for consequential damages." Instead, we are called upon by the third-party plaintiffs in this case to apply the theory of implied indemnity.

The theory of implied indemnity has developed from common law and has been frequently commented on by Illinois courts. In *Carver v. Grossman* (1973), 55 Ill. 2d 507, 305 N.E.2d 161, the Illinois Supreme Court discussed the history of implied indemnity in Illinois. The court, speaking through Mr. Justice Ryan, said:

"Illinois has long adhered to the rule that there can be no contribution among joint tortfeasors. [Citations.] The wisdom of the rule and the reason for its continuance have been severely questioned. [Citations.] * * * The theory of implied indemnity has been applied judicially to mitigate the harsh effect that could result from an inflexible application of the rule which prohibits contributions. [Citations.] * * *

This theory [of implied indemnity] has been used to cover a variety of situations [citation]. Where indemnity has been allowed the conduct of the indemnitor has usually been characterized as the primary cause or active negligence while that of the indemnitee has been characterized as the secondary cause or passive negligence. (*Chicago and Illinois Midland Ry. Co. v. Evans Construction Co.*, 32 Ill. 2d 600.)" *Carver v. Grossman*, 55 Ill. 2d 507, 510-511.

In *Chicago & Illinois Midland Ry. Co. v. Evans Construction Co.* (1965), 32 Ill. 2d 600, the court, speaking through Mr. Justice Schaefer, said:

"In any case involving a noncontractual claim of indemnity between tortfeasors, the indemnitee has, by hypothesis, violated a duty that he owed to a third party and has become liable to respond in damages for his breach of duty. By his action for indemnity he seeks to shift the loss to the indemnitor upon the theory that the indemnitor has also violated a duty that he owed to the third party. Particularly in jurisdictions like this one, in which contribution among joint tortfeasors is not allowed, [citations] it is necessary to draw a qualitative distinction between the negligence of the two tortfeasors if the action for indemnity is to succeed." *Midland*, 32 Ill. 2d 600, 602-03.

In the instant case Rubloff and Sandburg Center acquired a complete maintenance and repair contract for servicing the elevators. The agreement provided Otis would directly employ and supervise trained and qualified people to keep the equipment properly adjusted and to maintain the elevator equipment in proper and safe operating condition. This would include regular and systematic examination, adjustment, lubrication and repair and replacement of component parts. The agreement even provided for emergency call back service. Otis also assigned maintenance personnel exclusively to the Sandburg Center buildings each and every working day. Otis undertook to inspect the elevators in a particular building once a week and by that system provided a weekly maintenance repair program. This program provided in part the riding of the vehicles to observe the operation of the doors and the levelling conditions.

When consideration is given to the relationship between

counterplaintiffs and counterdefendant in light of the particular accident, it is clear there is a qualitative distinction between those defendants.

■■ This court recognizes Rubloff and Sandburg Center are liable to plaintiff for her injuries. These defendants did not and could not relieve themselves of responsibility to the plaintiff by claiming it was the duty of Otis to maintain the elevator. They simply maintain the plaintiff's injuries were due to the active negligence of Otis in failing to maintain the elevator properly, as opposed to the passive negligence of Rubloff and Sandburg Center who had assigned their duty of elevator maintenance to Otis. We agree with this analysis. Otis' failure to discover the defective condition of the elevator is the active and primary wrongful act on which liability was assessed against Rubloff and Sandburg Center.

The jury's verdict denying the counterclaim for indemnity is contrary to the manifest weight of the evidence. For these reasons, the verdict of the jury, on the counterclaim, in favor of Otis and against Rubloff and Sandburg Center, must be set aside, and judgment notwithstanding the verdict must be entered in counterplaintiffs' favor.

For the foregoing reasons the judgment of the circuit court of Cook County for plaintiff is affirmed insofar as it relates to defendants Rubloff and Sandburg Center. As to defendant Otis, however, its judgment is reversed and judgment entered here, in favor of the plaintiff, in the amount of $65,000. The judgment regarding the counterclaim in favor of Otis is reversed and judgment entered here in favor of counterplaintiffs Rubloff and Sandburg Center in the amount of $65,000.

Affirmed in part and reversed in part.

LINN and ROMITI, JJ., concurring.