Jacqueline Crawford, Minor, by Spafford J. Crawford, Her Next Friend, Appellant, v. Orner & Shayne, Inc. et al., Appellees.

Gen. No. 43,949.

Opinion filed June 4, 1947. Released for publication June 19, 1947.

HENRY MITGANG, of Chicago, for appellant; ARTHUR A. WOLFINSOHN and C. JEROME BISHOP, both of Chicago, of counsel.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, of Chicago, for appellees; WILLIAM H. SYMMES, DAVID JACKER and JOHN M. O'CONNOR, JR., all of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

In her second amended complaint filed in the circuit court of Cook county, Jacqueline Crawford, a minor by her next friend, alleged that Orner & Shayne, Inc.,

and William F. Forbrich, were the owners and operators of the apartment building at 366 East 53rd street Chicago; that the building was equipped with windows and window screens; that the screens were seasonably removed and replaced by the defendants through their agents; that in September 1940 the defendants removed the screens from the windows in the apartment where plaintiff lived with her parents; that the screens were marked and identified so that they could be replaced the following year; that in May 1941 defendants replaced the screen in the dining room window of the apartment with a screen that was loose, defective and which did not fit properly; that plaintiff's parents notified the defendants and their agents that the screen was loose, defective and dangerous and that it did not fit properly; that plaintiff, who was three years of age, might fall out of the window if she should lean thereon; that defendants and their agents agreed to replace or repair the defective screen; that it was the duty of defendants to exercise due care and caution in the management, operation and maintenance of the building and the screens; and that defendants were bound to exercise care and caution in the installation of the screens so that there were no defects which were known or could have been known by defendants. Defendants were also charged with divers acts of negligence, including the construction and installation of the screen that did not fit, and the failure to carry out their agreement with the parents of plaintiff to provide a safe screen, as a result of which plaintiff sustained fractures of her skull and other injuries of a permanent and lasting nature. She asked damages of $25,000. Defendants denied the allegations of the amended complaint. Shortly before the trial, however, they admitted the ownership and operation of the premises. The answer further alleged a written lease for the premises between plaintiff's father and William F. Forbrich, one of the defend-

ants. On a trial before the court and a jury, the court, at the close of plaintiff's case, directed a verdict for the defendants and entered judgment against plaintiff. The latter moved to vacate the judgment and for a new trial, which motions were denied. This appeal followed.

The parents of plaintiff were tenants, having moved into the third apartment in the premises in May 1935. It is a court building on the north side of 53rd street, the front facing south and the rear to the north. The Crawfords occupied a four room apartment consisting of a bedroom, living room, dining room and kitchen. The windows in the dining room face north. There are three windows in the dining room, a large window in the center and a small window on either side. The distance between the floor of the apartment and the window sill of these windows is 23½ inches. Jacqueline was injured on Sunday, June 29, 1941, when she and the window screen fell out of the third floor window of the dining room. Henry Hendricks testified that on the afternoon of the occurrence he had taken his car out of a garage in the alley near the back of defendants' building. Children were playing in a play lot at the rear of the apartment building. As he stopped to talk to one of the boys, he saw a little girl, the plaintiff, in a third floor window above the play yard, sitting on the window sill. At that time he also saw two other children sitting on a window sill in the same building. He testified further that he saw plaintiff's hand move and the screen came down; that the screen fell to the ground on the concrete; and that plaintiff fell to the ground right behind the screen.

The mother of plaintiff testified that the afternoon was "very hot"; that she had put her daughter to bed for an afternoon nap; that she, witness, took up the newspaper to read; that she dropped off to sleep; that the windows in the dining room were open; that the screens were in; that "the next thing that hap-

pened'' a little boy was knocking on her door to tell her that her daughter had been injured; and that she then saw that the window screen was out of the window. She testified further that ''they'' customarily reported any necessary repairs to be made to the janitor; that after it became warm she noticed that one of the screens that had been put in was tilted and was crooked in the window; that she then stopped at the janitor's apartment and told him that this screen in the dining room had something wrong with it and did not fit and was advised by the janitor that he would come up and look at it; and that prior to the occurrence the janitor came up to the apartment and straightened the screen out in the window. Plaintiff's father testified that at the time of the mishap he was at work; that in the latter part of May he had examined the window screen in the dining room and found it to be too narrow for the window; that he then reported to the janitor about the screen being too narrow for the window; that about the first of June 1941, while paying his rent at the office of the defendant corporation, he had a conversation with a lady in the cashier's cage; that he told her ''we had a defective screen in the dining room''; that she said: ''Well, the janitor reported it and it will be taken care of''; that about a week or so before the mishap he called the janitor in to look at the screen; that the janitor looked at the screen and showed witness where it was too narrow for the window; that correct screens had always been put in the windows before that time; that the ''wrong screen'' had been put in the window this time; and that the screens were always marked.

Before the close of the case plaintiff made the following offer of proof:

''May I state for the record that I offer to prove by the father, who was a witness in the plaintiff's case, that a week or two before the accident, he saw the janitor and said to the janitor 'When are you going to

come up and fix that screen for me? You know I have got a young daughter here who might fall out of the window.' And he said he would come up and he did come up at that time and showed him that the screen was too small and said that he would get another. screen to fit into that window.''

The court sustained defendants' objection to the offer of proof. The court refused to admit into evidence the copy of the lease between plaintiff's father and the owner of the property, Mr. Forbrich. The defendants were unable to bring in either the original or a signed copy of the lease and were unable to identify the lease submitted as identical with the original. Mrs. Andrews, a witness for defendants, testified that the original lease between the parties had been lost. Plaintiff sustained serious injuries, including a fracture of both pubic bones, a fracture of the ninth rib on the right side and a fracture of the skull.

By a motion to direct a verdict for the defendants at the close of all the evidence, the sole question presented is whether the evidence in favor of the plaintiff, taken to be true, together with all legitimate inferences, fairly tends to sustain her cause of action. In deciding the motion the court has no right to pass upon the credibility of the witnesses, to consider any purported impeachments, the weight thereof, or the quality of the testimony. The question presented on such motion is whether there is any evidence fairly tending to prove plaintiff's complaint. *Vieceli v. Cummings,* 322 Ill. App. 559, 562. In *Chicago City Ry. Co. v. Tuohy,* 196 Ill. 410, 422, the court said that ''a child of the age of only six years or under is exempt from responsibility in the matter of contributory negligence, and so far as the exercise of due care for his own safety is concerned.'' As plaintiff was three years of age at the time of the occurrence, she could not be guilty of contributory negligence.

■ Plaintiff urges that whether defendants are guilty of negligence in the operation of their property, or in the installation of improvements thereon, under the issues made by the pleadings and proof, are questions of fact which should have been submitted to the jury, and that the court erred in directing a verdict for the defendants. Defendants reply that there was no duty to furnish a screen sufficient to support plaintiff. There was no duty imposed on the defendants to maintain a screen in the dining room window sufficient to support plaintiff when she leaned against it. In *Egan v. Krueger,* 103 N. J. L. 474, 135 Atl. 811, 812, a child was injured when she fell from the window in which there was an improperly fitting screen. The court, in reversing the judgment, said (811):

"A screen in a window, obviously and of common knowledge, is not placed there for the purpose of keeping persons from falling out of a window, any more than the glass in the window itself is placed there for that purpose. Consequently it is manifest that this accident was not the result of the failure of the defendant to perform any duty which he owed to the child for her protection."

See also *Schlemmer v. Stokes,* 47 Cal. App. (2d) 164, 117 P. (2d) 396; *Chelefou v. Springfield Inst. for Savings,* 297 Mass. 236, 8 N. E. (2d) 769; *Yates v. Tessier,* 5 La. App. 214, 217.

■ Plaintiff asserts that the evidence could reasonably sustain a finding that a contract actually existed between the plaintiff's parents and defendants to make suitable repairs to the screen, or to replace the screen with one that fit the window properly, and that the defendants' negligence in failing to make such repair or replacement was the proximate cause of the injury to plaintiff; that the trial court erroneously sustained the objection to the evidence offered by her;

and that where the defendants, by their agents, expressly agreed to replace or repair a window screen so that it fit properly and would not fall out, thereby endangering a child of a tenant, it becomes a question of fact for a jury whether their negligent failure to replace or repair the screen was the proximate cause of the injuries sustained when the child and the screen fell out. Plaintiff alleges that the defendants, after they had been notified that the screen was too narrow, that plaintiff would probably lean against it, and that if it was not replaced by a properly fitting one she might fall out of the window, agreed to replace or repair the screen so that it would not be dangerous for a child leaning on it. We agree with defendants that the record contains no proof of any such agreement. The offer of proof which the court rejected would not prove the agreement as alleged. Such proof would not show that defendants had agreed to install a screen that would be sufficient to prevent plaintiff from falling out of the window.

The opinion written by Mr. Justice DUNCAN in *Cromwell v. Allen,* 151 Ill. App. 404, and quoted with approval by our Supreme Court in *Oppenheimer v. Szulerecki,* 297 Ill. 81, 86, reviews the law relating to the liability of the landlord to his tenant for personal injuries received in consequence of a breach of contract by the landlord to make repairs. Mr. Justice DUNCAN quotes the following with approval from Jones on Landlord and Tenant, Sec. 592:

"It may be stated that as a general rule a landlord who has covenanted to repair, is not liable in tort for personal injuries resulting from the want of repair. . . . On principle, the landlord, who has contracted to make repairs that he is not otherwise under obligation to make, should be held to exactly the same liability that a stranger-contractor would incur. Damages for personal injuries resulting from the mere breach of such a contract must be deemed to be

too remote and not within the contemplation of the parties at the time the contract was made. . . . But to permit a recovery for such damages, based on contract simply because it is in the form of an action of tort, would be making a distinction that could not be justified by reason or authority. There must be something more than a mere failure on the part of the landlord to make the repairs he has agreed to make. It makes no difference whether the form of the action is *ex delicto* or *ex contractu*, the real and substantial *gravamen* of the complaint is the alleged breach of contract, and in such a case the same law is applicable to both classes of action. A landlord, under contract to repair, may, under some circumstances, be liable for damages for personal injuries by reason of a negligent failure to make repairs; but in such case his negligence must be firmly established as a basis for the liability."

Mr. Justice DUNCAN continues (408):

"What special circumstances would render the landlord liable to his tenant for personal injuries received in consequence of a breach of a contract to make repairs is not stated by Mr. Jones. On principle we would say, that there can be no such liability unless the covenant to repair amounts to a covenant to keep the premises reasonably safe; or unless the contract was made under such circumstances as plainly indicated that such damages were contemplated by the parties at the time of making the contract; or unless there is some duty resting on the landlord to make the repairs not arising from the contract."

From the testimony of plaintiff's father it appears that there was a written lease for the premises from May 1, 1940 to April 30, 1941. Mrs. Andrews testified for defendants that she was employed by them, and she identified a copy of a lease between plaintiff's father and Mr. Forbrich covering the term

from May 1, 1941 to April 30, 1942. The original lease was lost. The attorney for plaintiff objected to the introduction of the lease and the court sustained the objection. The record shows that there was a written lease binding the parties at the time of the occurrence. The evidence does not show that the contract on which plaintiff relies was a part of the lease. If any such a contract was made it was made subsequent to the making of the lease. An agreement on the part of the landlords to repair the demised premises after the making of the lease and the delivery of possession thereunder is a *nudum pactum* and not binding upon the landlords. *Strong v. Soodvoisky,* 141 Ill. App. 183; *Borggard v. Gale,* 107 Ill. App. 128. For the further reason that the alleged agreement was a *nudum pactum,* the plaintiff cannot recover.

We are of the opinion that the court was right in directing a verdict for the defendants, and the judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

LEWE, P. J., and KILEY, J., concur.