ROBERT PRESTON, Plaintiff-Appellee, *v.* CITY OF CHICAGO, Defendant-Appellant—(GEORGETTE PRESTON, Plaintiff; JOSEPH JAGLA, Individually and d/b/a Neighbors Lounge, Defendant).

(No. 60117;

First District (1st Division)—November 17, 1975.

Richard L. Curry, Corporation Counsel, of Chicago, for appellant.

John M. Burke, of Burke & Burke, Ltd., of Chicago, and Lester D. McCurrie, of Oak Lawn, for appellee.

Mr. PRESIDING JUSTICE BURKE delivered the opinion of the court:

This appeal is from a judgment upon a verdict in favor of Robert Preston in a personal injury action against the City of Chicago. The jury awarded plaintiff $100,000 in damages. Joseph Jagla, originally a co-defendant, was nonsuited on plaintiff's motion prior to trial. Thereafter, the City of Chicago filed a third-party complaint against Mr. Jagla. This third-party complaint was dismissed upon Mr. Jagla's motion. Defendant appeals contending: (1) that the finding that the cracked condition of the public sidewalk was the proximate cause of the plaintiff's injury was against the manifest weight of the evidence; and (2) that the trial court improperly dismissed defendant's motion to file a third-party complaint.

As defendant limits its appeal on evidentiary matters to the cause of plaintiff's fall, we will limit our review of the record to evidence regarding the cause of that fall. The evidence presented regarding the cause

of the plaintiff's fall and injury consisted of the plaintiff's testimony, photographs and testimony regarding the condition of the sidewalk where plaintiff fell, and the testimony of two doctors who treated the plaintiff and a fireman who arrived at the scene shortly after the fall.

Plaintiff testified that on the afternoon of July 16, 1968, he had two glasses of beer at the Neighbors Tavern owned by Joseph Jagla at 2758 South Spaulding Avenue in Chicago. He arose to leave and exited by a door which led out onto a public sidewalk. There were two steps which led down from the door to the sidewalk. The plaintiff testified:

> "Well, I pushed on the screen door, it pushed outward, I just kept my hand on it, walked down the two steps, released the door, started to head southeasterly toward my car, and about that time a horn blew, real loud horn, and I just looked and next thing I knew I'm laying on the sidewalk."

At the time, plaintiff testified, he did not know what caused his fall, but afterwards he realized that a "fairly deep crack" in the sidewalk was what caused his fall. He testified that he tripped, having a sensation "like you caught your foot on a rug." In describing his fall he said he did a twist and landed primarily on his left shoulder. Photographs entered into evidence by the plaintiff and defendant depicted a crack in the sidewalk running parallel to the two steps leading from the tavern. The crack was no more than 2 feet from the tavern steps. An investigator for the plaintiff testified that the cement on the far side of the crack was raised approximately 2 inches above the cement closest to the tavern stairs. The investigator testified that the crack extended for about 5 or 6 feet.

George Wortner, a Chicago fireman, testified that he found the plaintiff lying across the sidewalk approximately 3 or 4 feet from the stairs of the tavern. In recalling what the plaintiff said to him concerning how the accident took place, Wortner testified that the plaintiff told him he tripped or flipped and, "It seemed to me like he made a complete flip and turned over." Wortner could not remember whether the plaintiff described his fall as a somersault or a flip and did not recall the plaintiff mentioning that he fell on the sidewalk.

Dr. Frank Grill, the plaintiff's family physician, testified he visited the plaintiff at St. Anne's Hospital the morning after the accident. He testified that the plaintiff told him that he "missed his step." The doctor went on to testify that:

> "Now, by what I mean 'he missed a step,' we calculated that he had stumbled into—because of a defect in the sidewalk.

\* \* \*

There was a defect in the sidewalk as he stepped off the last step. And he was quite descriptive of what he stepped in, what looked like a hole. And that is how he fell."

Dr. Grill's medical history of the plaintiff's injury stated that "patient stated he missed his step leaving a store and fell, and was unable to walk thereafter." Another report, by a resident orthopedist at St. Anne's Hospital stated that the patient, "tripped, somersaulted and fell on his right leg." None of the reports concerning the plaintiff from the hospital mentioned that the plaintiff had stepped in a hole in the sidewalk.

Another medical history taken by Dr. Kenneth Sanders at the Veterans Hospital contained an entry that the plaintiff, "fell either on the second step or on the sidewalk." A later entry in the plaintiff's medical history at the Veterans Hospital said the plaintiff was injured when he tripped on a sidewalk.

Defendant's first contention on appeal is that the verdict was against the manifest weight of the evidence. The evidence, defendant argues, clearly shows that the plaintiff's fall was caused by the plaintiff tripping on the tavern stairs and not by the plaintiff tripping over the crack in the public sidewalk. Therefore, defendant argues, the verdict against the City of Chicago, which must have been based upon a finding that the plaintiff's fall and injury was caused by the crack in the sidewalk, was against the manifest weight of the evidence. Defendant argues that the evidence shows that the plaintiff "somersaulted" after tripping. Such testimony, that the plaintiff did a somersault after tripping over a 2-inch crack in a sidewalk is "inherently improbable and incredible," defendant contends, and therefore, the only logical explanation for the plaintiff's fall, is that he tripped while going down the tavern stairs.

■■ What the plaintiff meant by the term "somersaulted" is not clear from the testimony. No one questioned the meaning of the term at trial, and furthermore the plaintiff used other terms to describe his fall including "twisting" and "flipping." However one may describe his fall, we do not find it inherently improbable that a person could somersault after tripping over a 2-inch crack in a sidewalk. The credibility of the plaintiff's testimony on this point was a question of fact for the jury and we find no valid reason to disturb the verdict. (*Moore v. Checker Taxi Co.*, 133 Ill.App.2d 588, 273 N.E.2d 514; *Bouillon v. Harry Gill Co.*, 15 Ill.App.3d 45, 301 N.E.2d 627.) Furthermore, the proximate cause of an injury is ordinarily a question of fact for the jury. (*Juliano v. Oravec*, 53 Ill.2d 566, 293 N.E.2d 897.) We are of the opinion that there was sufficient credible evidence for the jury to base a finding that the plaintiff's fall and injury was caused by the crack in the sidewalk.

Defendant's second contention is that the trial court improperly denied defendant's motion to file a third-party complaint against Joseph Jagla, the owner of the tavern.

Mr. Jagla was named as a codefendant along with the City of Chicago when the plaintiff brought his suit. About a month before the trial the court granted plaintiff's motion to nonsuit Mr. Jagla. Several days later the City filed a third-party complaint against Jagla. Mr. Jagla then filed a motion to dismiss the third-party complaint because it failed to state a cause of action. Pursuant to Mr. Jagla's motion, the court on September 13, 1973, entered an order striking the third-party complaint.

Defendant contends that its third-party complaint stated a cause of action because it contained an allegation that the third-party defendant's negligence was active while the third-party plaintiff's negligence was at most passive. The third-party complaint stated that Mr. Jagla, as a tavern owner, had a duty to his business invitees to keep the sidewalk immediately abutting the tavern in a reasonably safe condition. The complaint then went on to allege that Mr. Jagla had breached this duty by negligently allowing and permitting the sidewalk to become unsafe and dangerous to use and for failing to give warning to the plaintiff, his business invitee, of the unsafe condition. The third-party complaint then concluded by alleging that, "any negligence alleged, if shown, against the CITY OF CHICAGO by the Plaintiff, can only be passive and that the negligence of the Third Party Defendant is active negligence." The third-party complaint asserted that the City was entitled to be indemnified by Mr. Jagla for the amount of any judgment entered against it in the instant action.

■■ In Illinois, indemnification is only available where the party seeking indemnification was passively negligent while the party against whom indemnification is sought was actively negligent. (*Miller v. DeWitt*, 37 Ill.2d 273, 226 N.E.2d 630; *John Griffiths & Son Co. v. National Fireproofing Co.*, 310 Ill. 331, 141 N.E. 739; *Stewart v. Mister Softee of Illinois, Inc.*, 75 Ill.App.2d 328, 221 N.E.2d 11; and *Spivack v. Hara*, 69 Ill.App.2d 22, 216 N.E.2d 173.) There can be no action for indemnity unless there is a qualitative distinction between the negligence of the two tortfeasors. *Lindner v. Kelso Burnett Electric Co.*, 133 Ill.App.2d 305, 273 N.E.2d 196; and *Scully v. Otis Elevator Co.*, 2 Ill.App.3d 185, 275 N.E.2d 905.

■■ In examining the third-party complaint we find only two acts of negligence charged against the third-party defendant: that of negligently allowing and permitting the sidewalk abutting his tavern to fall into an unsafe condition and that of a failing to warn the plaintiff of this unsafe condition. Permitting the sidewalk to fall into an unsafe condition and

failing to warn the plaintiff of this unsafe condition are the precise acts of negligence that are the basis of the plaintiff's complaint against the City of Chicago which is seeking indemnification against Mr. Jagla. We can find no qualitative distinction between the third-party plaintiff's alleged negligence and the third-party defendant's alleged negligence. Under these circumstances the City of Chicago does not have a valid ground for indemnification against the third-party defendant. We are of the opinion that the trial court's dismissal of the third-party complaint was proper.

Defendant argues, however, that it did allege that it was passively negligent while the third-party defendant was actively negligent. While we agree that the blank statement that the City of Chicago was passively negligent and the third-party defendant was actively negligent is contained in the third-party complaint, we find that none of the negligent acts alleged against the third-party defendant demonstrate any distinction between the City's negligence and the tavern owner's negligence. A third-party complaint for indemnity is legally insufficient where it merely alleges the legal conclusion that the third-party plaintiff was passively negligent while the third-party defendant was actively negligent without alleging any facts to support that conclusion. *Muhlbauer v. Kruzel,* 39 Ill.2d 226, 234 N.E.2d 790.

██ Defendant further contends on appeal that the third-party complaint alleges that the third-party defendant's activities "caused the broken condition of the sidewalk." However, in examining the third-party complaint, we only find the allegation that the third-party defendant "permitted" the sidewalk to become unsafe. Nowhere is there an allegation that an act of the defendant caused the crack in the sidewalk. Furthermore, this act of permitting the sidewalk to become unsafe is no different from the plaintiff's allegation against the City of Chicago which alleges that the City "permitted" the sidewalk to be in a broken condition.

Accordingly, the court's order dismissing the third-party complaint and its judgment for the plaintiff and against the City of Chicago are affirmed.

Judgment and order affirmed.

GOLDBERG and SIMON, JJ., concur.