MERCEDES KUHN, Plaintiff-Appellee, *v.* GENERAL PARKING CORPORATION *et al.*, Defendants and Third-Party Plaintiffs-Appellants.— (ILLINOIS RIGHT TO LIFE COMMITTEE, Third-Party Defendant-Appellee.)

First District (3rd Division)    No. 79-1855

Opinion filed July 29, 1981.

Frank Glazer, Ltd., of Chicago, for appellants.

John A. Doyle, Ltd., for appellee Mercedes Kuhn.

Stanley J. Davidson and E. Michael Kelly, of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellee Illinois Right to Life Committee.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

Mercedes Kuhn, the plaintiff, brought this negligence action against General Parking Corporation (General Parking), Benjamin E. Sherman & Son, Inc. (Sherman & Son),[1] and Illinois Bell Telephone Company (Bell Telephone) to recover damages for bodily injury she suffered at her place of employment when she caught her heel in a broken asphalt floor tile. The plaintiff alleged that General Parking, the owner of the building, and Sherman & Son, the managing agent, were negligent in failing to maintain and repair the premises leased to the plaintiff's employer, Illinois Right to Life Committee (Right to Life). Bell Telephone was alleged to be negligent by breaking the tile and failing to repair it. General Parking and Sherman & Son filed a third-party action against Right to Life seeking indemnification in the event that liability was imposed upon them. They alleged that under their lease agreement, Right to Life, as lessee, had the duty to maintain the premises. After all the evidence was presented, the trial court granted a directed verdict in favor of Right to Life and denied motions for directed verdict by General Parking, Sherman & Son and Bell Telephone. The jury returned verdicts in favor of the plaintiff against General Parking and Sherman & Son and in favor of Bell Telephone against the plaintiff.

On appeal General Parking and Sherman & Son contend that the trial judge erred in: (1) failing to direct a verdict in their favor because they owed no duty to the plaintiff and because the plaintiff was guilty of contributory negligence, (2) directing a verdict in favor of Right to Life, (3) giving certain of the plaintiff's instructions, and (4) ruling on certain evidentiary matters.

At trial the plaintiff called Edward Greenhalgh, the former building manager. At the time of the plaintiff's accident, he supervised a number of employees regarding the maintenance of the building. Greenhalgh discussed the standard operating procedures for repairing and replacing broken floor tiles. It was the building management, not the tenant, who repaired broken and cracked tiles. When damage was reported to the building management, a work order would be given to the carpenter who kept similar tiles in storage. If the telephone company would break a tile during telephone installations it could not repair the tile without the building management's consent. Greenhalgh could not recall whether he issued a work order to replace the broken tile that caused the plaintiff's injury, but assumed he had based on custom and practice. He stated that, under normal operating conditions, it would take 24 to 48 hours to issue a work order and complete the work requested.

Peter Borchert, a carpenter employed by Sherman & Son, testified as

---

[1] The term "defendants" will be used in this opinion in reference to General Parking and Sherman & Son.

an adverse witness. He stated that he received work orders from Greenhalgh and that he had received a work order to repair or replace a floor tile in the area leased to Right to Life. He did not repair the tile until after the plaintiff's injury occurred.

Anthony Williams testified as an adverse witness and stated that on December 12, 1975, while he was working for Bell Telephone, he installed telephones in the Right to Life offices. During the installation, a floor tile broke, and he notified Greenhalgh, who stated that the broken tile would be replaced.

Mercedes Kuhn, the plaintiff, testified that she was the office manager for Right to Life on December 15, 1975, when Right to Life took occupancy of a suite at the building owned and managed by the defendants. She was notified on that date by Mr. Greenhalgh that a tile in the office was broken and that it would be taken care of shortly. The broken tile was located a foot and a half in front of her desk in an aisle that led to the counter near the front of the office. Kuhn testified that at about 12:30 or 1 p.m., on December 24, 1975, she was taking care of a visitor at the counter. In walking to the counter from her desk she passed over the broken tile. She walked to a file cabinet, back to her desk to get a pen, and then stepped away from her desk to return to the counter when she caught the heel of her right shoe in the broken tile and fell. She sustained injuries to her right leg, hip and arm.

On cross-examination Kuhn testified that nothing was done to barricade the broken tile. She stated that the office lighting was sufficient and that the tile was plainly visible. Kuhn could not recall whether she looked at the tile every time she walked over it and said there was enough room to walk around it. Kuhn further testified that just prior to her fall she was aware of the broken tile but did not deliberately look at it as she was conversing with the office visitor.

The relevant portion of the lease between General Parking and Right to Life provided:

"12. Repairs: [T]he Lessee shall, at the Lessee's own expense, keep the premises in good order, condition and repair during the term, * * * under the supervision and with the approval of the Lessor. If the Lessee does not make repairs promptly and adequately, the Lessor may, but need not, make repairs, and the Lessee shall pay promptly the cost thereof. At any time or times, the Lessor, either voluntarily or pursuant to governmental requirement, may, at the Lessor's own expense, make repairs, alterations or improvements in or to the Building or any part thereof, including the premises * * *."

The defendants contend that the trial court erred in failing to direct a verdict against the plaintiff. They argue that they owed no duty to the

plaintiff to maintain or repair the premises leased to her employer because a lessor has no obligation to repair leased premises (*Baxter v. Illinois Police Federation* (1978), 63 Ill. App. 3d 819, 380 N.E.2d 832) and because they retained no control over the premises (*Taylor v. Geroff* (1952), 347 Ill. App. 55, 106 N.E.2d 210). The defendants also argue that their promise to repair the broken tile, which was made after the execution of the lease, was made without consideration and thus was not binding upon them. *Forshey v. Johnston* (1971), 132 Ill. App. 2d 1106, 271 N.E.2d 81; *Crawford v. Orner & Shayne, Inc.* (1947), 331 Ill. App. 568, 73 N.E.2d 615.

Recovery in tort for negligence requires that there be a breach of duty owed to the plaintiff by the defendant. (*E.g., Boyd v. Racine Currency Exchange, Inc.* (1973), 56 Ill. 2d 95, 306 N.E.2d 39; *Chisolm v. Stephens* (1977), 47 Ill. App. 3d 999, 365 N.E.2d 80.) The existence of a legal duty is a question of law to be determined by the trial court. (*E.g., Barnes v. Washington* (1973), 56 Ill. 2d 22, 305 N.E.2d 535; *Lindquist v. Highland Park Hospital Foundation* (1976), 40 Ill. App. 3d 722, 353 N.E.2d 156.) Generally, a lessor is under no obligation to repair portions of rented premises which are in the exclusive use of the tenant. (*Dapkunas v. Cagle* (1976), 42 Ill. App. 3d 644, 356 N.E.2d 575; *Jordan v. Savage* (1967), 88 Ill. App. 2d 251, 232 N.E.2d 580.) The lessor also is not liable for injuries to a third party on the premises leased to the tenant and under the tenant's control. *Coshenet v. Holub* (1980), 80 Ill. App. 3d 430, 399 N.E.2d 1022.

At common law, a lessor who retains control over portions of a building has a duty to all persons lawfully on the premises to maintain the premises in reasonable repair. (*Gula v. Gawel* (1966), 71 Ill. App. 2d 174, 218 N.E.2d 42; *Taylor v. Geroff.*) Traditionally, this rule applied to common areas and not to demised areas. (*Campbell v. Harrison* (1973), 16 Ill. App. 3d 570, 306 N.E.2d 643.) However, in *Campbell v. Harrison* the reviewing court found that the lessor could be liable for injuries caused by the disrepair of the tenant's walls and ceiling if the lessee could show that the lessor retained control over them.

■■ We believe the evidence in the instant case supports a finding that the defendants maintained control over the asphalt tile floors throughout the building where the plaintiff's injury occurred. Under the provisions of the lease, the lessor reserved the right to make any repairs it desired. (*Cf. Bielarczyk v. Happy Press Lounge, Inc.* (1980), 91 Ill. App. 3d 577, 414 N.E.2d 1161 (reservation of right to repair, without more, will not impose duty to repair upon the landlord).) In the instant case the defendants exercised the right to repair when their building manager told the Bell Telephone employee that he would have the broken tile repaired and when the building manager notified the plaintiff that the tile had been

broken and that it would be fixed. The building manager testified that the carpenter kept replacement tiles in storage and that it was standard procedure for the building management to repair and replace broken tiles. He stated that the telephone company could not make the repair without the building management's permission and that tenants would never be advised to repair broken tiles.

■■■ As further evidence of control, the building manager completed the work order form requesting that the building carpenter repair the broken tile and this repair was made after the plaintiff was injured. While evidence of subsequent repairs is inadmissible to show prior negligence, it is admissible to show who controlled the premises when control is in issue. (*Coshenet v. Holub.*) The control exercised by the defendants over the asphalt floor tiles created a duty to repair the broken tile in Right to Life's office, and the defendants' failure to do so could result in liability for injuries occurring on the premises. Viewing the evidence presented at trial, we cannot say that it so overwhelmingly favored the defendants that no contrary verdict based on that evidence could stand. Therefore, the trial court did not commit error when it denied the defendants' motion for a directed verdict. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

We also believe that the defendants were not entitled to a directed verdict based on the issue of the plaintiff's contributory negligence. The defendants contend that the plaintiff's conduct constituted contributory negligence as a matter of law. They base this contention on the fact that the plaintiff knew that the tile was missing, that she did not barricade the area where the tile was located and that she did not look at the tile when she approached it immediately before her fall.

■■ The existence of contributory negligence is ordinarily a question of fact for the jury. (*Laflin v. Estate of Mills* (1977), 53 Ill. App. 3d 29, 368 N.E.2d 522; *Armagast v. Medici Gallery & Coffee House, Inc.* (1977), 47 Ill. App. 3d 892, 365 N.E.2d 446.) To be guilty of contributory negligence as a matter of law, it must appear from the undisputed facts that all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.; Rhoades v. W. E. O'Neil Construction Co.* (1980), 80 Ill. App. 3d 1117, 400 N.E.2d 1035.

■■ A factual situation similar to that in the instant case was presented in *Morehead v. Mayron* (1972), 3 Ill. App. 3d 425, 279 N.E.2d 473. In that case this court held that the question of contributory negligence was properly submitted to the jury despite evidence that the plaintiff knew that the carpet upon which she fell had been torn, that she walked over the torn area for three or four months and that she walked upon it the day

she fell without looking at it. (Contra, *Killeen v. R. W. Dunteman Co.* (1979), 78 Ill. App. 3d 473, 397 N.E.2d 436.) Applying *Morehead* to the case at bar, we conclude that the plaintiff's knowledge of the defective condition and her failure to look at the area on the day she fell would not require a finding of contributory negligence as a matter of law. We believe that reasonable minds could differ as to whether the plaintiff was guilty of contributory negligence, and thus the question was properly preserved for the jury.

■■ The defendants next contend that a directed verdict was improperly granted to Right to Life in the third-party action for indemnification. They contend that Right to Life, as a tenant and in accordance with the lease, had control of the premises and had the primary duty to make repairs. In Illinois indemnification is available only when there is a qualitative distinction between the negligence of the two tortfeasors (*Jackson v. Burlington Northern, Inc.* (1980), 84 Ill. App. 3d 967, 405 N.E.2d 805), that is, the party seeking indemnification must have been passively negligent whereas the party against whom indemnification is sought must have been actively negligent. (*Harris v. Algonquin Ready Mix, Inc.* (1974), 59 Ill. 2d 445, 322 N.E.2d 58; *Bloodsaw v. Corbetta Construction Co.* (1980), 86 Ill. App. 3d 52, 407 N.E.2d 876.) Where the joint tortfeasors owe the same duty to the injured person, there can be no indemnification. *Chicago & Illinois Midland Ry. Co. v. Evans Construction Co.* (1965), 32 Ill. 2d 600, 208 N.E.2d 573; *Preston v. City of Chicago* (1975), 34 Ill. App. 3d 322, 340 N.E.2d 251.

■■ Assuming negligence by Right to Life, the third-party defendant, the trial court correctly entered a directed verdict in its favor as to the issue of indemnification. There was no qualitative distinction between the negligence of the defendants and Right to Life, as they all breached their duties to repair the broken tile. It is irrelevant that Right to Life's duty was derived from the lease while the defendants' duties were based on common law.

The third issue raised by the defendants is whether the trial court committed error in giving the plaintiff's instructions numbered 10 and 13. The defendants argue that instruction number 10 was improper because it stated that the defendants owed a duty of ordinary care to the plaintiff. They argue that instruction number 13, which stated that they negligently maintained the premises, was improper because it was not supported by the evidence. The plaintiff contends that the defendants have waived this error because they failed to include the instructions in the record.

■■ We agree with the plaintiff. Before an issue of instructions will be considered by a reviewing court, all instructions and the identity of the tendering party must be presented to the reviewing court so that the instructions may be considered as a whole. (*People v. Woodruff* (1956), 9

Ill. 2d 429, 137 N.E.2d 809; *Denniston v. Skelly Oil Co.* (1977), 47 Ill. App. 3d 1054, 362 N.E.2d 712; *Jacobs v. Holley* (1972), 3 Ill. App. 3d 762, 279 N.E.2d 186.) Even if there was no waiver, we reject the defendants' argument and find the evidence at trial did support the instructions. As stated earlier in this opinion, the defendants maintained the asphalt tile floors on the premises and, as a result of this control, owed a duty of reasonable care to the plaintiff.

■■ ■ The defendants' final argument concerns certain evidentiary rulings made by the trial judge. They contend that an error was committed when the plaintiff was questioned as to the defendants' promise to repair. The defendants contend that evidence of the promise to repair was inadmissible because a promise to repair does not create an obligation to do so. A promise to repair made after execution of a lease and without consideration is *nudum pactum* and unenforceable. (*Chisolm v. Stephens* (1977), 47 Ill. App. 3d 999, 365 N.E.2d 80.) However, as stated earlier in this opinion, the basis upon which liability was imposed upon the defendants was not the existence of a gratuitous promise but the fact that the defendants exercised control over the maintenance and repair of broken floor tiles and had in fact exercised control over the broken tile which caused the plaintiff's injury. Thus, we believe the evidence of the defendants' promise to repair was relevant and admissible for this purpose.

The defendants also contend that the trial court erred in permitting the plaintiff to question Greenhalgh as an adverse witness when at the time of trial Greenhalgh was no longer employed by Sherman & Son. At trial the court held that Greenhalgh was not an adverse witness and could not be designated as such. However, the plaintiff's counsel was permitted to question Greenhalgh as if he was an adverse witness.

■■ Section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60), which permits examinations of adverse witnesses, begins with the language: "Upon the trial of any case * * *." It has been stated that, as a result of this language, the statute contemplates the status of the witness as of the time of litigation and not as of the time of accrual of the cause of action. (*Bansch v. Donnelly* (1979), 77 Ill. App. 3d 922, 396 N.E.2d 869; *Bituminous Casualty Corp. v. City of Harrisburg* (1942), 315 Ill. App. 243, 42 N.E.2d 971.) An exception has been made to allow a person no longer employed by the defendant to be called as an adverse witness when the trial is protracted or where there is a long delay in bringing the case to trial. *Frisch v. International Harvester Co.* (1975), 33 Ill. App. 3d 507, 338 N.E.2d 90.

As the instant case does not meet the *Frisch* exception, we believe the trial court was correct in determining that Greenhalgh did not meet the criteria for adverse witnesses. Therefore, error was committed when Greenhalgh was questioned by the plaintiff's counsel by means of leading

questions during direct examination. However, because the defendants have made no showing of prejudice resulting from this technical error, we cannot say that the questioning of Greenhalgh resulted in reversible error. *Gatto v. Curtis* (1972), 6 Ill. App. 3d 714, 286 N.E.2d 541.

■■ The third evidentiary ruling alleged as error by the defendants was the court's allowance of evidence of custom and practice. Specifically, the defendants contend that such parol evidence cannot be used to vary the terms of an unambiguous written contract. It is true that custom or usage cannot be proved to explain contractual terms that are unambiguous and free from doubt. (*Bean v. Norfolk & Western Ry. Co.* (1980), 84 Ill. App. 3d 395, 405 N.E.2d 418; *Quilico v. Union Oil Co.* (1978), 58 Ill. App. 3d 87, 374 N.E.2d 219.) We note, however, that the defendants have not shown the relevance of this principle of law to their case. There were no contentions made during the trial that the lease between General Parking and Right to Life was ambiguous, nor were attempts made to vary the express terms of the lease. Furthermore, as stated above, liability was not imposed upon the defendants because of the lease provisions. Since we find no violation of the parol evidence rule, we reject the defendants' argument in this regard.

As their final argument on appeal, the defendants contend that the trial court improperly struck the lease between General Parking and Right to Life from evidence.[2] The defendants argue that the lease was relevant to their defense because it outlined their obligations to the plaintiff who stood in the shoes of the Right to Life Committee. However, the defendants have not shown how they were prejudiced by the court's ruling to strike the lease from evidence. We note, again, that the basis for the defendants' liability to the plaintiff was not the provisions of the lease but the defendants' exercise of control over broken asphalt tiles. Furthermore, the lease did not relieve the defendants of liability for failure to make repairs but instead showed that the defendants reserved the right to enter the leased premises to voluntarily make repairs. Therefore, the error, if any, in striking the lease from evidence was harmless.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

RIZZI, P. J., and McNAMARA, J., concur.

---

[2] Initially, the lease was admitted into evidence at the close of the defendants' case by way of stipulation. At that time, portions of the lease relative to repair and maintenance of the premises were read to the jury. After a directed verdict was granted in favor of the third-party defendant, Right to Life, the plaintiff moved that the lease be stricken and that reference to the lease provisions during closing argument be forbidden. The trial judge struck the lease from evidence to be consistent with his grant of a directed verdict for Right to Life and because defendants' counsel refused to reserve comment during closing argument as to the duties of the tenant, Right to Life, under the lease.