REBECCA TUCHINSKY *vs.* BEACON PROPERTY MANAGEMENT
CORPORATION & another.[1]

No. 97-P-0809.

Middlesex. April 14, 1998. - September 16, 1998.

Present: KASS, SMITH, & JACOBS, JJ.

*Landlord and Tenant,* Landlord's liability to third person, Control of premises.
*Contract,* Lease of real estate.

In a negligence action in which the plaintiff alleged that the owner of a com-
mercial building, and, derivatively, the building management company,
failed to maintain, under a reservation of rights in the lease, an upper floor
elevator lobby door located within premises leased to and, by the terms of
the lease, wholly under the control and responsibility of the plaintiff's
employer, the judge correctly granted summary judgment in favor of the
defendants, where the reservation of rights in the landlord set forth in the
lease did not alter, in the circumstances, the allocation of responsibility for
maintenance of the tenant's premises. [470-472]

CIVIL ACTION commenced in the Superior Court Department on
July 25, 1995.

The case was heard by *Hiller B. Zobel,* J., on motions for
summary judgment.

*Jonathan A. Karon* for the plaintiff.

*Cynthia M. Clarke* for One Post Office Square Associates.

*Kara Larzelere* for Beacon Property Management Corpora-
tion.

KASS, J. On the basis of a landlord's reservation of a right to
approve its tenants' construction plans and to make repairs if
the tenant does not, the plaintiff Rebecca Tuchinsky seeks to
impose liability upon the defendants for injuries she suffered in
space otherwise wholly in the control of her employer, who is
the tenant. A judge of the Superior Court allowed defense mo-
tions for summary judgment and ordered entry of judgment in
favor of the defendants. We affirm.

[1]One Post Office Square Associates.

These are the undisputed facts. Tuchinsky was an employee of Putnam Investments, Inc. (Putnam), which occupied most of the fourth floor and all of the fifth through fourteenth floors of One Post Office Square, a high rise office building in Boston. That building was owned by One Post Office Square Associates (the landlord) and managed on behalf of the landlord by Beacon Property Management Corporation (the management company). The accident, a peculiar one, occurred on March 25, 1994, while Tuchinsky was standing in the elevator lobby on the fifth floor of Putnam's office. Between the elevator lobby and interior space was a partition through which there was a door or set of doors. Tuchinsky was hurt when a co-worker pushed that door open so that it struck Tuchinsky in the back. The alleged negligence in the design of the door is that it did not have some mechanism which would restrict its degree and rate of travel when opened.

By designation in the lease, the elevator lobby was part of the leased premises. It was not common area and was not used by anyone except Putnam and its invitees. In 1987, Putnam, which had been a tenant since 1979, undertook a major renovation of its space, including the fifth floor elevator lobby. Putnam hired its own architect to do the drawings and specifications for the renovations, and it also selected and paid the contractor who built them. This was consistent with lease terms that made the design and building of leasehold improvements the responsibility of the tenant. Under the lease, the tenant was also responsible for repairing the leased premises. Tuchinsky is interested in placing responsibility for any neglect in design of the door on someone other than Putnam, her employer, because against Putnam she can receive only workers' compensation. From a third party she has the potential for a larger recovery.

"[A] lessor of commercial premises is liable in tort for personal injuries only if either (1) [it] contracted to make repairs and made them negligently, or (2) the defect that caused the injury was in a 'common area,' or other area appurtenant to the leased area, over which the lessor had some control." *Chausse* v. *Coz*, 405 Mass. 264, 266 (1989). *Sheehan* v. *El Johnan, Inc.*, 38 Mass. App. Ct. 975 (1995). Neither the landlord nor the management company made any repairs to the door or the elevator lobby, so they cannot be liable for having made them negligently. The allegedly unsafe door was not in a common area. It was *within* the leased area, and it was not in an area *appurtenant* to the leased area.

Tuchinsky's residual theory of recovery from the defendants is that the landlord reserved in the lease various rights to make alterations and repairs and to approve Putnam's alterations and repairs. In § 10 of the lease, the landlord reserves the right to make alterations to the building but it is apparent when the section is read as a whole that it refers to alterations for the benefit of the building as a whole and does not involve the interior layout, equipment, or decor of leased premises. Section 12 of the lease requires that the landlord give its prior written consent to construction that the tenant proposes to undertake, such consent not to be unreasonably withheld or delayed. That sort of clause is thought to enable a landlord to protect the structural integrity of its building. See Bloom, Lease Drafting in Massachusetts §§ 7.56-7.60 (Mass. Continuing Legal Educ. 1996). Under § 14 of the lease, the landlord reserves the right to make repairs that the tenant neglects to make. Section 17.1 confers on the landlord the right to make reasonable rules and regulations for the safety and reputation of the building. The parties refer to no rules and regulations pertinent to the lobby or door. The assertion of liability against the management company is derivative, i.e., as the agent of the landlord.[2]

Putnam occupied ten floors in their entirety and the better part of an eleventh.[3] In addition to construction and repair, Putnam was responsible for maintaining liability insurance for injuries sustained on the leased premises and it paid pro rata portions of tax increases and general operating expenses of the building. There is a manifest design to place the tenant in charge of the large, in terms of square feet, and long term leasehold estate. In that respect the arrangements between landlord and tenant greatly resemble those described in *Agustynowicz* v. *Bradley*, 25 Mass. App. Ct. 405, 407-408 (1988), and *Sheehan* v. *El Johnan, Inc.*, 38 Mass. App. Ct. at 975-976. See *Leonardo* v. *Great Atl. & Pac. Tea Co.*, 340 Mass. 450, 454 (1960). The manner in which landlords are generally said to have maintained an element of control is in relation to a physical part or area in property, such as a hall, stairs, elevators, approach paths, sidewalks, and parking areas. See Restatement (Second) of Property, Landlord & Tenant §§ 17.3 and 17.4 (1977). In the

---

[2]The record appendix contains neither the complaint nor the amended complaint.

[3]On that partial floor, the fourth, the elevator lobby, significantly, was not included in the leased premises.

only case called to our attention by the plaintiff in which a landlord was held liable for a defect in the floor in space within leased premises, there was evidence that there was a procedure of reporting repair problems to the landlord and that an agent of the landlord, in response to a request from the tenant, had said that he would come and fix a broken tile. See *Kuhn* v. *General Parking Corp.*, 98 Ill. App. 3d 570, 575 (1981).

In *Hopkins* v. *F. W. Woolworth Co.*, 11 Mass. App. Ct. 703, 705-706 (1981), the overlapping responsibilities that are typical of shopping centers resulted in liability by landlord *and* tenant for injuries resulting from a defect in a sidewalk that was under the landlord's control but also under the tenant's nose, and the tenant had been aware for some time of "a real bad *tripping hazard*" (emphasis original). *Id.* at 705. As to the fifth floor of Putnam's premises there is neither such overlapping responsibility nor any evidence of awareness of a hazard on the part of the landlord.[4] The reservation of the right to approve construction drawings and the right to make repairs that the tenant had neglected are provisions that allow intervention by the landlord to maintain the integrity and character of its building should they be threatened. This landlord's right to intervene in the event of certain contingencies does not alter the basic allocation of responsibilities that the parties have worked out in their detailed lease, namely, that the tenant is in control of and responsible for its leased space and that the landlord is not.

*Judgment affirmed.*

---

[4]We do not intimate that the door was hazardous, but assume so for purposes of analysis.