Murphy, J.
The plaintiff, Toys ‘R’ Us, Inc. (“TRU”), brought this action against the defendants, Central New England Warehouse, Inc. (“Central”), William Reisner Corp. (“Reisner”) and Pullman Associates, Inc. (“Pullman”) alleging that these defendants negligently owned, operated and maintained a warehouse in which a substantial amount of TRU’s merchandise was destroyed by fire. The matter is before the Court on Pullman’s Motion for Summary Judgment premised on the collective theories (a) that it did not have a duty toward TRU, (b) whatever duty it may have had went to common areas only or belonged to Reisner under the terms of a lease, and (c) it was unaware of the alleged hazard that caused the fire that damaged *709 TRU. For the reasons detailed below, Pullman’s motion for summary judgment is ALLOWED.
BACKGROUND
In late 1994, Pullman was formed as part of a wider effort to develop real estate in Worcester as a community shopping center. In order to accomplish this goal, the interested investors needed to acquire a number of different parcels. One of these was an improved parcel located at 72 Pullman Street Worcester, Massachusetts owned by Reisner. On December 30, 1994, Pullman and Reisner completed a series of transactions by which Pullman took title to the building at 52 Pullman Street while Reisner continued to own the land. Additionally, Pullman and Reisner executed an immediate “leaseback” to Reisner of the building titled in Pullman’s name. The so-called “sale and leaseback” was secured by a mortgage requiring Pullman to make monthly payments to Reisner. Pullman contends these arrangements operated as an option on the property that could be terminated whenever it did not make a monthly payment.
Reisner, acting on its authority under the lease, rented most of the building to Central on October 10, 1995. Central, which operates a number of local warehouses, began storing merchandise for TRU, one of its customers, at the Pullman Street building just three days later. There is no dispute that TRU knew that Central was utilizing the building for storage of its merchandise.
On October 26, 1995, fire damaged the building and destroyed a significant portion of valuable TRU merchandise stored within the building. In its complaint, TRU claims the fire was legally caused by Central’s employees stacking cartons of TRU merchandise too close to overhead, infrared natural gas heaters in the building.
DISCUSSION
The court will grant summary judgment where there are no genuine issues of material fact and where the record, including the pleadings and affidavits, entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Corrections, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and showing that summary judgment entitles it to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party satisfies this burden by submitting affirmative evidence refuting an essential element of the opposing party’s case, or by showing that the opposing party has no reasonable expectation of proving an essential element of its case at trial. O'Sullivan v. Shaw, 431 Mass. 201, 203 (2000). The court, for purposes of summary judgment, will review the facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Ford Motor Co., Inc. v. Barrett, 403 Mass. 240, 242 (1988).
Pullman’s initial contention is that any duty it owed to anyone using the building rests squarely with Reisner under the terms of the December 30, 1994 lease agreement. TRU disputes this, citing several clauses in the lease that it alleges allows Pullman to exercise a measure of control over the property. Pullman seeks support for its position in lease section 1 which states “[t]he parties intend that this shall be a net lease . . . the Tenant shall pay one hundred percent of the real estate taxes, maintenance and repairs, insurance premiums ... so as to ensure that the rent will be absolutely net to the Landlord”; and to Section 6 which absolves Landlord of any and all responsibility “for making any repairs whatsoever” to the property. TRU, for its part, also cites Section 1 for the proposition that Pullman “shall ensure that the demised premises at all times complies with all applicable laws.” It seeks support as well from Pullman’s ability to withhold consent for any non-structural alterations in Section 8, and Reisner’s exemption from indemnification for losses arising from Pullman’s own negligence in Section 9.
A property lease is a form of contract to which contract construction principles pertain. Lexington Insurance Co. v. All Regions Chemical Labs, Inc., 419 Mass. 712, 713 (1995). In interpreting any contract, “the object of the court is to construe the contract as a whole, in a reasonable, practical way, consistent with its language, background and purpose.” Vergato v. Commercial Union Insurance Co., 50 Mass.App.Ct. 824, 826 (2001). Unambiguous contract language should be given its plain and ordinary meaning. Cody v. Connecticut General Life Insurance Co., 387 Mass. 142, 146 (1982). When, as here, the parties’ agreement is contained in more than one document, the separate documents “must be read together to effectuate the intentions of the parties.” Chase Commercial Corp. v. Owen, 32 Mass.App.Ct. 248, 250 (1992).
Reading the mortgage and lease together, the Court concludes that Pullman and Reisner intended to create only a nominal property interest for Pullman without giving it any real control over the building. The net effect of the interconnected agreements allowed Reisner to maintain complete control of the property, both land and building, while receiving monthly payments from Pullman. Pullman retained leverage to remain a viable participant in any possible property development. While Reisner was Pullman’s nominal tenant and owed rent under the lease terms, this rent was fully subsumed by Pullman’s monthly mortgage payments. The fact that Reisner might, under certain circumstances, owe Pullman additional sums in the second year of the contract, establishes only that Pullman’s payment schedule was subject to change at Reisner’s option, an option Reisner would exercise under certain conditions. Reisner benefited from this arrangement because it injected some income predictability into its business operations, but it does not *710 evidence Pullman’s desire to exercise increased rights to control the building, principally because the arrangement only affected Pullman’s status as debtor.
Since neither Pullman nor Reisner intended or contemplated an actual transfer of Reisner’s property interests granting Pullman any control of the building or its operations, the sections TRU cites in support of its position do not work so as to bind Pullman to control under any occupier’s liability theory. Any lack of precision in drafting of the documents is, standing alone, insufficient to invalidate the unambiguous intent of both parties. See Pagounis v. Pendleton, 52 Mass.App.Ct. 270, 274 (2001).
Thus, the Court concludes on the basis of the undisputed facts of this case that Reisner remained in sole control of the building at 72 Pullman Street, and Pullman purchased only the ability to restrain Reisner’s previously unencumbered right to sell the property.
Pullman’s lack of control over the building is fatal to TRU’s negligence claims against Pullman in this matter. A lessor of commercial real estate is liable in tort for injuries “only if either (1) [it] contracted to make repairs and made them negligently, or (2) the defect that caused the injury was in a ‘common area’ or other area appurtenant to the leased area, over which the lessor had some control.” Tuchinsky v. Beacon Property Management Corp., 45 Mass.App.Ct. 469, 470 (1998), citing Chausse v. Coz, 405 Mass. 264, 266 (1989), and Sheehan v. El Johnan, Inc., 38 Mass.App.Ct. 975 (1995). It is undisputed that Pullman never agreed to make and never actually made any repairs to the building. Therefore, TRU can not successfully maintain a negligence claim against Pullman and Pullman is entitled to judgment as a matter of law.
ORDER
For the foregoing reasons, defendant Pullman Associates, Inc.’s motion for summary judgment is ALLOWED.